FILED
United States Court of Appeals
Tenth Circuit

November 14, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

YUAN SHAN WU,

        Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

        Respondent.

No. 11-9550
(Petition for Review)

## ORDER AND JUDGMENT[*]

Before **TYMKOVICH**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

Yuan Shan Wu petitions for review of the final order of the Board of

Immigration Appeals' decision affirming the Immigration Judge's denial of his claim

for asylum.[1] Exercising our jurisdiction under 8 U.S.C. § 1252(a), we affirm the

decision of the BIA and deny the petition for review.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The IJ also denied restriction on removal, under 8 U.S.C. § 1231, and
protection under the United Nations Convention Against Torture ("CAT"). Because
(continued)

## I. Background

Wu, a native and citizen of the People's Republic of China, entered the United States illegally in June 2001 and was placed in removal proceedings in March 2002. Wu conceded removability but sought asylum, restriction on removal, and voluntary departure.

Wu asserted two bases of persecution by the government of China: (1) persecution on account of political opinion because he opposed China's family planning policy after his wife was forcibly sterilized following the birth of the couple's second child; and (2) persecution on account of religion because he was a practicing Christian and held church gatherings at his home. Because the lengthy procedural history of Wu's claims for asylum relief, which included a change of venue and two separate appeals to the BIA, an overview of the proceedings will be helpful in understanding the claims in this petition.

### A. Removal Proceedings

#### 1. April 13, 2005 Hearing

Wu's removal proceedings began in New York City where he resided at the time. At a hearing before an IJ in 2005, Wu testified that on August 15, 1998, approximately two weeks after his second child was born, family planning officials

---

Wu does not argue that the BIA erred in denying restriction on removal or CAT relief, Wu has waived review of those claims on appeal. *See Krastev v. I.N.S.*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

appeared at his home and instructed his wife to report for a sterilization procedure. Wu requested that his wife have a full month of recovery before reporting for the procedure, to which the family planning officials agreed.

Wu testified that he and his wife planned to go into hiding on the evening of August 29 to forestall the forced sterilization, but family planning officials appeared at his home that day, which was earlier than expected. He claimed that two of the six officials pushed him down to the wall and did not allow him to talk while the others dragged his wife and forcefully pushed her into a vehicle, taking her to be sterilized. Wu's wife was sterilized later that day. Wu claimed that he did not leave China at that time because his children were so young.

Instead, Wu fled in 2001 due to the events underlying his religious persecution claim. Wu, the son of a preacher and himself a practicing Christian, testified that he was baptized in 1993 and that this was the "most important event in [his] life." Admin. R. at 420. He began holding church gatherings, which grew to approximately thirty people, at his home in 1997. He claimed that in March 2001, public security officials came to his home and warned that the church gatherings were illegal and could not be held. Wu nevertheless continued to hold the church gatherings for three more weeks. But after learning through relatives that public security officials might come to his home to make an arrest, he and his wife fled to his in-laws' home for one week. He testified that officials did in fact go to his home and, finding nobody there,

broke into the door and destroyed objects in the home, including desks and chairs. Wu then left China on May 26, 2001.

Wu was questioned on cross-examination regarding an apparent discrepancy between his written asylum application and his testimony about the alleged March 2001 events. In his application for asylum, Wu stated that police "tore down the place." *Id*. at 802. He testified, though, that officials "broke into the door, and, then, they just destroyed objects there." *Id*. at 409. He explained that he meant by his statement in his asylum application that the "door was destroyed" and when officials broke in, desks, chairs, and other objects were destroyed. *Id*. at 416.

Wu was further questioned about the lack of corroboration of his religious persecution claim in his supporting documentation, which included letters from his father and wife. The IJ noted that neither letter mentioned that Wu was a Christian, that Wu was baptized, or made any reference to public security officials coming to Wu's home to make an arrest or destroying objects in his home. With respect to his father's letter, which claimed alleged religious persecution experienced by Wu's father at the hands of Chinese officials, Wu attempted to explain the absence of corroborating information by stating that perhaps his father just "neglected" to mention his baptism and did not mention officials coming to Wu's house because Wu was now far away and his father did not want "this unusual thing [to] appear [before Wu] again." *Id*. at 423. Additionally, although Wu testified that his wife knew he was baptized and a Christian and also knew about the church gatherings at their home

and that public security officials had gone to their home in search of him, Wu explained that his wife's letter did not address these matters because he requested information from her concerning her sterilization procedure only.

### 2.  Immigration Judge's April 13, 2005 Oral Decision

At the conclusion of the hearing, the IJ entered an oral decision denying Wu's application for asylum, restriction on removal, and voluntary departure.  Regarding Wu's forced sterilization claim, the IJ found Wu's inability to explain why he could not make arrangements for his wife to flee before family planning officials came to their home on August 29, 1998, indicated a lack of credibility.  Further, neither Wu's written application nor Wu's wife's letter referred to Wu being physically mistreated by family planning officials at the time his wife was taken for sterilization.  Nor was it confirmed that the sterilization procedure was involuntary.

Regarding Wu's religious persecution claim, the IJ found Wu's written asylum application, stating that public security officials "tore down the place," and his testimony, that officials "broke into the door," inconsistent.  The IJ found the inconsistency unresolved by Wu's testimony and he was unable to resolve the inconsistency by looking to corroborating documentary evidence, because the evidence did not refer to the alleged break-in.  Nor was Wu's baptism corroborated by the supporting documentation.  The IJ did not find Wu's explanations for this lack of corroboration sufficient.  The IJ concluded Wu's religious persecution claim had been "most likely . . . completely fabricated" to bolster the forced sterilization claim.

- 5 -

*Id*. at 359.  Given this, the IJ declined to give Wu the "benefit of the doubt" regarding the coerced nature of the sterilization procedure.  *Id*.  Further, in light of Wu's credibility problems, the IJ found the letter from Wu's wife, that was offered to authenticate the coerced nature of the sterilization, "inherently unreliable." *Id*. Indeed, the IJ noted that there was a "strong likelihood that [Wu] and his wife acquiesced in the sterilization procedure." *Id*. at 356.  The IJ, therefore, made an overall adverse credibility finding and denied Wu's claims for relief.

### 3. Board of Immigration Appeals' October 31, 2006 Decision

Wu appealed the IJ's decision to the BIA, and, on October 31, 2006, a single member of the BIA entered a brief order, pursuant to 8 C.F.R. § 1003.1(e)(5), remanding the matter to the IJ for further fact-finding regarding the forced sterilization claim.

The BIA noted that the IJ found Wu not credible with respect to his claim of religious persecution because Wu had failed to include in his asylum application certain events to which he had testified, including his baptism.  It also noted that the IJ found unresolved inconsistencies in Wu's report of the public security officials' activity at his home.  Finally, the BIA noted that the IJ concluded that Wu's corroborating evidence did not support his claim of religious persecution.  The BIA remarked that based on an adverse credibility finding, the IJ discredited Wu's assertion that his wife was forcibly sterilized.  The BIA did not disturb these findings

or discuss them further, other than to comment that the IJ "undertook a thorough review of [Wu's] religious persecution claim." Admin. R. at 297.

Regarding the forced sterilization claim, however, the BIA found that the IJ did not "fully consider" the claim. *Id.* Although the IJ "appeared to accept that the wife was sterilized," he did not address whether the sterilization certificate indicated whether the procedure was coerced or voluntary and, instead, found the letter from Wu's wife unreliable due to the adverse credibility finding on the religious persecution claim. *Id.* Based on the record before it, the BIA could not conclude, as had the IJ, that Wu's inconsistent testimony regarding his alleged religious persecution conclusively undermined his claim of forced sterilization.

The BIA, accordingly, remanded the matter for further fact-finding.

### 4. July 22, 2009 Hearing

Following the BIA's remand, Wu moved from New York to Colorado and filed a motion for change of venue, which was granted.[2] At a July 2009 hearing before an IJ in Colorado, Wu testified, for the second time, regarding his forced sterilization claim. The IJ limited Wu's testimony to the forced sterilization claim, construing the BIA's decision as remanding only that claim.

Wu testified consistently with his previous testimony concerning his marriage, the births of his two children, and the events surrounding his wife's forced

---

[2]     Wu also obtained new counsel in Colorado.

- 7 -

sterilization. With respect to the events occurring on the day of the sterilization, August 29, 1998, Wu testified in more detail that he struggled as he was held against a wall by family planning officials, that he tried to "protect" his wife, that he screamed to the family planning officials not to take his wife away and, further, that he called them "bastards" and "murderer[s]." *Id*. at 162-65.

As pertinent here, Wu also testified about a letter he wrote to family planning officials in China. Wu claimed he had a telephone conversation with his wife in early February 2008 that prompted him to write and mail a letter to Chinese family planning officials. He testified that his wife complained of fatigue, back pain, and headaches due to the sterilization. Hearing this, he became angry and wrote the letter opposing China's family planning policy and "curs[ing]" officials for his wife's condition. *Id*. at 172-73.

He testified that after sending the letter, he received a telephone call from his wife on February 28, 2008, informing him that police had come to the couple's home and told her that Wu had written a letter criticizing China's family planning policy. The police said that Wu's conduct was "anti-government, anti-Communist party" and they instructed Wu's wife to tell him to "surrender himself." *Id*. 175.

### 5. Immigration Judge's July 22, 2009 Oral Decision

The IJ issued an oral decision denying Wu's claims at the conclusion of the hearing. As an initial matter, the IJ noted that the evidence and analysis of Wu's claims were limited to the forced sterilization claim because the BIA had had a "full

opportunity to review" the religious persecution claim but had not disturbed it, and, so, the claim was "completely litigated and determined against" Wu. *Id*. at 115.

While the remanded proceedings were pending, the Attorney General had issued an opinion on the eligibility for refugee status of spouses of persons who have been forcibly sterilized. *See In re J-S-*, 24 I. & N. Dec. 520, 537-38 (A.G. 2008). Pursuant to *In re J-S-*, those spouses who have not themselves physically undergone a forced abortion or sterilization procedure are not *per se* entitled to refugee status but may, instead, qualify as a refugee upon a showing of *either a well-founded fear of being forced to undergo such a procedure or a well-founded fear of persecution for "other resistance" to a coercive family planning policy*.[3] *See id*. at 527-32.

Because there was no evidence that Wu was personally threatened with abortion or sterilization or that he had a well-founded fear of such procedures, the IJ analyzed Wu's claim based on "other resistance" to China's coercive family planning policy. The IJ found that the evidence that Wu stood in the family planning officials' way, that he yelled epithets, and that he was held against the wall "could be some resistance to the family planning regime." Admin. R. at 118, 121. Nevertheless, the IJ did not find that Wu was beaten or that any type of excessive force was used against Wu when his wife was taken by family planning officials for her sterilization. Instead, Wu was "simply physically removed from his wife and held against the wall

---

[3] Before *In re J-S-*, the BIA had held that spouses of persons who had been forcibly sterilized were per se eligible for refugee status, which was the law in effect at the time of the BIA's remand here.

for a short period of time, not beaten or imprisoned or punished in any other way." *Id*. at 121. As such, the IJ declined to find that Wu suffered any substantial level of harm due to such resistance. The IJ also rejected Wu's assertion that his wife's sterilization was actual harm visited upon Wu, deeming this an incorrect analysis of *In re J-S-*.

Nor did the IJ find that Wu demonstrated a well-founded fear of future persecution. The IJ was "not impressed" by Wu's testimony concerning the letter he had written in 2008 criticizing China's family planning policy, because this letter came "long after" his wife's sterilization procedure. *Id*. at 119. The IJ found it "unlikely" that "suddenly after 10 years," Wu would be compelled to communicate his concerns in writing to Chinese family planning officials. *Id*. Finding no corroboration of Wu's letter, other than a letter from Wu's wife, the IJ concluded that Wu's letter, which was supposedly written while Wu was already in removal proceedings, was likely manufactured to bolster his forced sterilization claim. And in any event, the IJ concluded, the events of February 2008 were insufficient to establish that Wu had a well-founded fear of persecution on account of other resistance to China's family planning policy.

The IJ, therefore, denied Wu's application for asylum and also denied restriction on removal, CAT protection, and voluntary departure.

### 6. Board of Immigration Appeals' July 26, 2011 Decision

Wu appealed the IJ's decision to the BIA, and, on July 26, 2011, a single member of the BIA entered a brief order, pursuant to 8 C.F.R. § 1003.1(e)(5), dismissing Wu's appeal and affirming the IJ's decision. Wu's religious persecution claim was not at issue as the BIA noted that it had affirmed the denial of this claim and, further, that the IJ in 2009 confirmed that the claim was fully litigated in earlier proceedings and not at issue on remand.

As to the sterilization claim, the BIA noted that during the pendency of the remanded proceedings, the Attorney General issued *In re J-S-*. The BIA was not persuaded by Wu's assertion that he was persecuted because he and his wife could not have as many children as they wished, concluding Wu's reasoning would undermine the holding of *In re J-S-* that the spouse of a person who has undergone forced sterilization is not eligible for refugee status absent a showing he engaged in other resistance to family planning policies.

The BIA concluded that Wu failed to show that he was persecuted or had a well-founded fear of persecution on account of other resistance to China's family planning policy. Although the BIA agreed that Wu demonstrated "other resistance" when he confronted the family planning officials at the time his wife was taken for sterilization, it found that he was not persecuted on account of his resistance because the harm he suffered did not rise to the level of persecution. The BIA also agreed with the IJ that Wu did not meet his burden of proof regarding future persecution.

- 11 -

Specifically, Wu did not demonstrate that the police had any further contact with his wife after they came to the couple's home in February 2008 or that if Wu were to be arrested upon his return, he had a reasonable fear his arrest would lead to persecution.

The BIA thus affirmed the denial of Wu's application for asylum. Given that he did not satisfy the lower burden of proof required for asylum, his claim for restriction on removal was also denied.

## II. Discussion

### A. Standard of Review

Because a single member of the BIA entered a brief affirmance order under 8 C.F.R. § 1003.1(e)(5), we review the BIA's decision as the final order of removal and, therefore, we "will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). In addition, "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id*. (internal quotation marks omitted).

We review any questions of law de novo, and we look to see if the agency's findings of fact are supported by substantial evidence. *See Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011). "[O]ur duty is to guarantee that factual

determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro*, 443 F.3d at 1204 (alteration in original) (internal quotation marks omitted). "The agency's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1204 (10th Cir. 2008) (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B).

"Credibility determinations are factual findings . . . subject to the substantial evidence test." *Uanreroro*, 443 F.3d at 1204. As such, "we will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable." *Woldemeskel v. I.N.S.*, 257 F.3d 1185, 1192 (10th Cir. 2001). Although we review a credibility determination with deference, the "IJ must provide specific, cogent reasons for not believing the petitioner." *Chaib v. Ashcroft*, 397 F.3d 1273, 1278 (10th Cir. 2005).

### B. Asylum Law

To be eligible for the discretionary relief of asylum under 8 U.S.C. § 1158(b)(1), Wu must demonstrate that he is unable or unwilling to return to his country because he has suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Krastev*, 292 F.3d at 1270; *see also* 8 U.S.C. § 1101(a)(42)(A). "Aliens basing their asylum claims upon a well-founded fear of

- 13 -

future persecution must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear [of] . . . persecution." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004) (alterations in original) (internal quotation marks omitted).

"Persecution is the infliction of suffering or harm upon those who differ . . . in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Chaib,* 397 F.3d at 1277  (internal quotation marks omitted).  Mere "denigration, harassment, and threats" are insufficient.  *Tulengkey v. Gonzales,* 425 F.3d 1277, 1280 (10th Cir. 2005) (internal quotation marks omitted).  Finally, Wu bears the burden of proving his eligibility for asylum.  8 C.F.R. § 208.13(a); *Woldemeskel*, 257 F.3d at 1188.

### C. Wu's Eligibility for Asylum

#### 1.  Forced Sterilization Claim

Wu's claim that he is a refugee entitled to asylum based on his forced sterilization claim is premised on the following provision:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure *or for other resistance to a coercive population control program,* shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

- 14 -

8 U.S.C. § 1101(a)(42)(B) (emphasis added). Importantly, as recognized by both the BIA and IJ, under *In re J-S-*, a spouse cannot rely upon the "sole fact of their spouse's persecution automatically to qualify for political asylum under the statute's coercive population control 'resistance' provisions." 24 I. & N. Dec. at 534-35; *see also Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1230 (10th Cir. 2012). "Thus, an individual who has not physically undergone a forced abortion or sterilization procedure is not *per se* eligible for refugee status." *Zhi Wei Pang*, 665 F.3d at 1230 (citing *In re J-S-*, 24 I. & N. Dec. at 534-35). Instead, as here, the "individual must demonstrate that (1) he resisted China's coercive population control program, (2) he suffered or has a well-founded fear that he will suffer persecution by the Chinese Government, and (3) such persecution was inflicted . . . *on account of* his resistance." *Id.* at 1230-31 (emphasis added) (internal quotation marks omitted); *see also In re J-S-*, 24 I. & N. Dec. at 542.

In determining whether an individual has demonstrated "resistance" to a coercive family planning policy, the IJ or BIA may consider a "wide range of circumstances, including expressions of general opposition, attempts to interfere with enforcement of government policy in particular cases, and other overt forms of resistance to the requirements of the family planning law." *In re S-L-L-*, 24 I. & N. Dec. 1, 10 (BIA 2006), *overruled on other grounds by In re J-S-*, 24 I. & N. Dec. 520 (A.G. 2008).

### a. Past Persecution

With these principles governing our analysis, we reject Wu's argument that the BIA erred in failing to find past persecution on account of his resistance to Chinese

- 15 -

family planning officials. "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Zhi Wei Pang*, 665 F.3d at 1231 (internal quotation marks omitted).

In declining to find past persecution on account of other resistance, the BIA explained that the harm suffered by Wu did not rise to the level of persecution because he was not injured, beaten or detained for a lengthy period. We agree that Wu's brief detention, lasting only minutes and without any resulting injuries, does not constitute persecution. *See Ritonga*, 633 F.3d at 976 ("lone occasion" where alien suffered "minor injuries" did not constitute persecution); *Kapcia v. I.N.S.*, 944 F.2d 702, 704, 708 (10th Cir. 1991) (two-day detention involving interrogation and beating did not rise to the level of past persecution). We therefore conclude that the BIA's failure to find Wu suffered past persecution on this basis is substantially supported in the record and that no reasonable adjudicator would be compelled to conclude to the contrary. *See Ismaiel*, 516 F.3d at 1204 (noting agency's findings of fact conclusive unless reasonable adjudicator compelled to conclude to the contrary).

Nor is there any merit in Wu's assertion that the BIA erred in determining that *In re J-S-* would be undermined if the BIA found Wu was persecuted because of his spouse's sterilization. Although somewhat unclear, we construe Wu's argument to be that the BIA erred because (1) his wife's forced sterilization is proof of persecution and should have been considered in determining whether Wu himself suffered persecution;

- 16 -

(2) Wu did, in fact, demonstrate "resistance"; and (3) given his wife's sterilization and the couple's inability to have further children coupled with his resistance, Wu has suffered persecution entitling him to asylum relief. *See* Pet'r Br. at 21-23.

Although Wu correctly recognizes that *In re J-S-* no longer permits automatic refugee status to the non-sterilized spouse but, instead, requires the applicant to show "other resistance," Wu nonetheless misconstrues *In re J-S-*. Wu's analysis is flawed in that he seemingly suggests that he must show, and did, only two, separate elements: "persecution" and "other resistance." He fails, however, to make the requisite nexus, as required under *In re J-S-*, between his "other resistance" to China's family planning policy and the persecution that he himself has suffered *on account of* that resistance.

There is simply no nexus between the persecution that Wu's wife suffered, *i.e.*, the forced sterilization, or the couple's inability to have further children, and Wu's resistance, *i.e.*, confronting officials when he was held against the wall. If Wu's wife's sterilization was in fact involuntary, this would constitute persecution as applied to her, *see* 8 U.S.C. §1101(a)(42)(B), but as to Wu, it would not. Instead, under *In re J-S-*, Wu must show that he engaged in "other resistance" and was himself persecuted *on account of* that resistance. Neither his wife's sterilization nor the couple's inability to have further children constitute persecution that Wu suffered because he resisted the family planning policy.

The BIA concluded Wu did not demonstrate persecution on account of other resistance to the forced sterilization and the record substantially supports this conclusion.

- 17 -

Accordingly, we perceive no error in the BIA's construction of *In re J-S-* and its application to the case at bar.

### b. Well-Founded Fear of Persecution

Wu asserts, in general, that he has a well-founded fear of persecution based upon his 2008 letter to Chinese family planning officials. His limited argument consists of reciting the fact that police appeared at his home and demanded his return to China and then stating that "[t]his shows that [Wu] does have a well-founded belief of future persecution for the letter." *Id.* at 24. Wu does not expressly assign error to the BIA, cite case law, or otherwise meaningfully develop an argument concerning his fear of future persecution. Because Wu has not adequately briefed this issue on appeal, we may decline to address it. *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1031 (10th Cir. 2007) (stating appellate issues advanced without reasoned argument need not be addressed); *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995) ("[I]t is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for appeal.") (internal quotation marks omitted)); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (stating that perfunctory allegations that "fail to frame and develop an issue sufficient to invoke appellant review" are waived).

But even if we did address the claim, the BIA explained Wu has not met his burden of proving a factual basis for his fear of persecution based on a letter written years after the sterilization.

## 2. Religious Persecution Claim

Wu also asserts the BIA erred in affirming the IJ's decision that Wu "completely fabricated" his religious persecution claim. Pet'r Br. at 26 (internal quotation marks omitted). He does not, however, present any argument in support of any claimed error by the BIA. Instead, he begins by providing the procedural history of the claim, and, in doing so, suggests that in his first appeal to the BIA in 2006, it is unclear whether the BIA adopted the IJ's findings regarding the religious persecution claim: the BIA "simply stated the IJ conducted a thorough review" of the religious persecution claim "but never stated whether it adopted the interpretation and remanded the case because of the lack of information regarding the forced sterilization." *Id*. at 25.

But that is the extent of Wu's attempted argument. Wu's brief falls short of asserting, for example, that the BIA did not adequately review his religious persecution claim in his first appeal. We will not craft Wu's arguments for him and, thus, there is no reasoned argument for us to review concerning any error in the BIA's 2006 review of the religious persecution claim. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) ("This court . . . will not craft a party's arguments for him.").

The remainder of Wu's argument regarding his claim of religious persecution claim is not persuasive. Outside of reciting facts related to his baptism and attempting to explain the inconsistencies between his asylum application and testimony, he presents no argument for review. Wu observes that the IJ "seemed to focus on [Wu's] forgetting to write about his baptism on his written application" and explains that he "may have overlooked writing it down." Pet'r Br. at 26. But he does not claim, for example, that the IJ's adverse credibility finding, which was based, in part, on the lack of corroboration regarding Wu's baptism, was unsupported or legally insufficient.[4] Regarding the IJ's concern about the discrepancy in Wu's statement in his asylum application that public security officials "tore the place down" and his testimony that officials broke into his home and destroyed objects, he explains that he "may have miss [sic] written the phrase 'tore the place down.'" *Id*. Again, he does not argue that the IJ's adverse credibility finding was unsupported. Given the lack of claimed error and our obligation to review the IJ's adverse credibility finding under a substantial evidence standard, we are not compelled to reverse.

---

[4]     While Wu's Reply Brief makes a semblance of an argument that failure to include information in an asylum application does not render testimony regarding the omitted information incredible, he does not raise this argument in his Opening Brief and, thus, we are not required to address it. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (noting issues raised for the first time in a reply brief generally are not reviewed). Nevertheless, omissions in an asylum application may form the basis of an adverse credibility determination. *See Ismaiel*, 516 F.3d at 1205-06. We find that the IJ's adverse credibility determination is reasonable.

## III. Conclusion

The petition for review is DENIED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge