FILED
United States Court of Appeals
Tenth Circuit

January 6, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ZHI WEI PANG,
a/k/a Zhi Wei Pan,

      Petitioner - Appellant,

v.

ERIC H. HOLDER, JR.,
U.S. Attorney General,

      Respondent - Appellee.

No. 10-9570

---

**APPEAL FROM THE BOARD OF IMMIGRATION APPEALS**

---

Rachel Gore (Theodore N. Cox with on the brief), Law Offices of Theodore Cox, New York, NY, for Petitioner.

Russell J.E. Verby (Tony West and Shelley R. Goad with on the brief), U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

---

Before **KELLY**, **SILER**,[*] and **MATHESON**, Circuit Judges.

---

**SILER**, Circuit Judge.

Zhi Wei Pang, a/k/a Zhi Wei Pan, illegally entered the United States in 1993 from his native country of the People's Republic of China. Just months after his

---

[*] The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

arrival he applied for asylum, withholding of removal under the Immigration and Nationality Act and relief under the Convention Against Torture (CAT). He claims he suffered economic and emotional persecution due to his resistance to Chinese population control policies. But because the economic penalties imposed on Pang did not rise to the level of past persecution, we affirm the decision of the Board of Immigration Appeals (BIA) and deny Pang's petition for review.

I.

Pang was a rice farmer in China and worked on approximately one acre of land that the government assigned to him. He raised 400 kilograms of rice per year but was forced to give 150 kilograms of his harvest to the government. The remaining rice was either sold or consumed by Pang's family.

Pang married his wife, also a native and citizen of China, in 1988. That year the couple gave birth to their first child, a daughter. Soon after her birth, Chinese family planning authorities forced Pang's wife to have an intrauterine device inserted to prevent additional pregnancies. Subsequently, Pang and his wife visited a private physician to remove the device.

In 1989 Pang's wife became pregnant again. When Chinese officials discovered the pregnancy they ordered her to have an abortion. But instead of aborting the child, Pang's wife hid with his brother for the duration of her pregnancy. Pang's son was born in July 1990. After Chinese officials learned of the birth, they forced Pang's wife to undergo a sterilization procedure in August 1990.

2

Subsequently, Pang's wife became pregnant again but the pregnancy was ectopic. She underwent another procedure to terminate the pregnancy and correct the botched sterilization.

The Chinese government fined Pang 3,000 renminbi (RMB) for violating birth control policies. Pang stated that this amount equaled five years of his family's income. By November 1991, approximately one year later, Pang had raised enough money from friends and relatives to pay 1,500 RMB. The Chinese government officially recognized his second child after the payment. But in January 1993, government officials confiscated his home entertainment equipment when Pang was unable to finish paying the fine.

In February 1993, over two years after his wife was sterilized and over a year after he paid half of his fine, Pang fled China for the United States. He currently owns a restaurant in Colorado and annually sends $2,000 to $3,000 to his family. Pang's family continues to live and farm on their government-assigned land.

When Pang entered the United States without inspection in 1993 the former INS commenced deportation proceedings under former INA § 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B). In August 1993, Pang requested asylum relief. At a hearing in 1996, the immigration judge (IJ) denied his application for asylum relief based on an adverse credibility finding and granted his application for voluntary departure. Pang appealed to the BIA, which affirmed the IJ's decision without opinion.

Pang appealed the BIA's decision to the United States Court of Appeals for

3

the Second Circuit, which granted Pang's petition for review. *Pang v. B.C.I.S.*, 448 F.3d 102 (2d Cir. 2006). It determined that the record failed to support the IJ's adverse credibility finding, which was based on "impermissible conjecture" and "the IJ's failure to develop the record." *Id.* at 109. It remanded the case to the BIA, and the BIA, in turn, remanded the case to the IJ.

On remand the venue changed to the Tenth Circuit. In 2008, the IJ denied Pang's applications for relief and granted a voluntary departure. Pang appealed to the BIA, but the BIA dismissed the appeal because he failed to demonstrate "past persecution on account of a statutorily enumerated ground." The BIA assumed *arguendo* that Pang's conduct constituted resistance, but found that the economic penalties imposed did not rise to the level of "past persecution." It noted that "it is not clear from the record how his standard of living may have changed after he paid the fine." Specifically, Pang's family remains on their land in China, where his wife continues to live and farm. Additionally, Pang "has not demonstrated an objectively reasonable fear of future persecution," because his debt to the Chinese government has been fulfilled. The BIA also denied Pang's request for withholding of removal and protection under the CAT.

## II.

### A.

To be eligible for asylum, an applicant must be a "refugee" within the meaning of INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). A "refugee" is a person unable or

unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The applicant bears the burden of proof of establishing eligibility for asylum. 8 C.F.R. § 208.13; *Woldemeskel v. INS*, 257 F.3d 1185, 1188 (10th Cir. 2001).

In 1996, Congress amended the statutory definition of "refugee" to include persons subject to, or resisting, coercive family planning policies. *See* IIRIRA § 601(a)(1). In pertinent part, the definition of refugee was amended as follows:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure *or for other resistance to a coercive population control program*, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he . . . will be . . . subject to persecution for such . . . resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

INA § 101(a)(42)(B), 8 U.S.C. § 1101(a)(42)(B) (2006) (emphasis added).

A spouse cannot rely upon "the sole fact of their spouse's persecution automatically to qualify for political asylum under the statute's coercive population control resistance provisions." *Matter of J-S-*, 24 I. & N. Dec. 520, 534-35 (BIA 2008). Thus, an individual who has not physically undergone a forced abortion or sterilization procedure is not *per se* eligible for refugee status. *Id.* Instead, the individual must demonstrate that (1) he "'resisted' China's coercive population control program," (2) he "suffered or has a well-founded fear that he will suffer

5

'persecution' by the Chinese Government," and (3) "such persecution was inflicted. . . 'on account of' his resistance. . . ." *Id.* at 542. A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1).

## B.

Because the BIA assumed that Pang's conduct in China constituted resistance, our analysis focuses on whether he suffered past persecution or has a well-founded fear of future persecution. *See J-S-*, 241 I. & N. Dec. at 542.

"In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008). We review the agency's factual determination that Pang did not suffer persecution under the substantial evidence standard. *Id.* The BIA's determination must be upheld "unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Sarr v. Gonzales*, 474 F.3d 783, 788-89 (10th Cir. 2007) (internal quotation marks omitted).

## III.

## A.

Pang argues that he suffered economic and emotional persecution as a result of his resistance to Chinese population control policies.

To determine whether a petitioner has demonstrated persecution, the BIA must examine harmful incidents in the "aggregate." *In re O-Z- & I-Z-*, 22 I. & N. Dec. 23, 26 (BIA 1998). "Persecution is the infliction of suffering or harm upon those who differ. . . in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (internal quotation marks omitted). Mere "denigration, harassment, and threats" are insufficient. *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005).

Economic hardships may qualify as persecution in two ways. First, economic persecution may exist when the government imposes penalties so severe that it jeopardizes the petitioner's life or freedom. *Vicente-Elias*, 532 F.3d at 1088-90 & n.4. Second, economic persecution may exist when the government deliberately places the petitioner at a severe economic disadvantage even though he is spared the bare essentials of life. *Id.* at 1088-89. Government sanctions that may amount to persecution include a "particularly onerous fine, a large-scale confiscation of property, or a sweeping limitation of opportunities to continue to work in an established profession or business." *In re T-Z-*, 24 I. & N. Dec. 163, 174 (BIA 2007); *see Vicente-Elias*, 532 F.3d at 1089.[1] The harm must be "of a deliberate and severe nature . . . that is condemned by civilized governments." *T-Z-*, 241 I. & N.

---

[1] In *Vicente-Elias*, we "assume[d], without deciding, that [the standard from *T-Z-*] is valid," and did not decide what level of deference, "if any," it is due as an agency decision. 532 F. 3d at 1089 n.3 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 563 n.10 (1999)).

Dec. at 173.

In *Li v. Attorney General of the United States*, 400 F.3d 157 (3d Cir. 2005), the Third Circuit determined that the petitioner met the "rigorous standard" for showing economic persecution. *Id.* at 159. In *Li*, the petitioner and his wife were punished by Chinese population control officials for having four children. *Id.* The couple was fined the equivalent of twenty months' salary; lost their government jobs and accompanying health insurance, food rations, and school payment; were effectively blacklisted from other government employment; and had their furniture and major household appliances confiscated. *Id.* The court held that these restrictions constituted economic persecution that threatened the family's freedom and possibly their lives. *Id.* at 168-69.

The Third Circuit similarly found that the Chinese government's cumulative economic and non-economic sanctions constituted a "pattern of mistreatment" amounting to persecution in *Cheng v. Attorney General*, 623 F.3d 175, 191 (3d Cir. 2010). This mistreatment included the forced insertion of an intrauterine device under circumstances that caused the petitioner extreme pain, government threats to take the petitioner's daughter and detain her boyfriend, and the imposition of fines for having an unauthorized child and for missing gynecological appointments. *Id.* at 195. The government also confiscated her family farm and truck, and forbade the entire family from working on the farm. *Id.* at 194. The court held that the seizure of such significant property, which "served as the exclusive source of the family's

8

livelihood," constituted an economic sanction so severe that it jeopardized the family's freedom and possibly their lives. *Id.* at 195.

Pang relies on *Li* and argues that he suffered both non-economic and economic harm rising to the level of past persecution, which entitles him to a presumption of a well-founded fear of persecution. Specifically, he helped hide his wife from family planning officials during her second pregnancy and suffered the emotional stress of her forced sterilization and resulting ectopic pregnancy. He also maintains that Chinese officials fined him the equivalent of five years' wages and confiscated his entertainment equipment.

In contrast to *Li* and *Cheng*, however, the penalties the Chinese government imposed on Pang did not jeopardize his life or freedom. There was no large-scale confiscation of property due to his political opinion. In fact, his family appears to have maintained their standard of living as rice farmers because they continue to farm their state-owned plot of land in China. *Cf. Vicente-Elias*, 532 F.3d at 1091-92 (finding no persecution where "[p]aying work has been available at times"); *T-Z-*, 24 I. & N. Dec. at 174 ("[A] large-scale confiscation of property, or a sweeping limitation of opportunities to continue to work in an established profession or business may amount to persecution[.]").

Pang also looks to the Ninth Circuit to establish that he has suffered persecution. In *Jiang v. Holder*, 611 F.3d 1086, 1095 (9th Cir. 2010), the court found that the Chinese government's cumulative economic and non-economic

9

sanctions constituted persecution. The petitioner was expelled from school because of a romantic relationship with his girlfriend, denied a marriage license because he and his girlfriend were underage, arrested for cohabitating with his girlfriend, released from prison after he paid 5,000 RMB and his girlfriend's pregnancy was forcibly aborted, and went into hiding when Chinese officials tried to arrest him at his unauthorized wedding. *Id*. at 1089-90. The court noted that the fine was not enough to establish persecution but that "the totality of the circumstances" caused the court to find that the petitioner suffered persecution. *Id*. at 1095-96 & n.2.

There are some similarities between Pang and the petitioner in *Jiang*. Like Pang's wife, the mother of the petitioner's child in *Jiang* was assaulted by Chinese officials and the petitioner was fined. But the petitioner in *Jiang* was fined 2,000 RMB more than Pang and, unlike the petitioner in *Jiang*, Pang has never been detained by Chinese authorities and forced into hiding to avoid arrest. Pang was allowed to continue to farm on government land despite his resistence to the government's policies. Also, the petitioner in *Jiang*, a minor and an expelled student, did not claim he suffered economic hardship even though he was forced to pay 2,000 RMB more than Pang. *Id*. at 1096 n.2. Compared to the petitioner in *Jiang*, Pang's life or freedom was not in jeopardy and he did not suffer a severe economic disadvantage because of the fine.

The mere fact that an economic sanction was imposed on Pang is insufficient to establish persecution. Economic hardship and circumstances that rise to the level

10

of those in *Li* and *Cheng* are sufficient to establish persecution.

Pang undoubtedly suffered emotional distress because of his wife's sterilization, her ectopic pregnancy and the fine. The evidence, however, allowed the BIA to determine that the fine was not so onerous as to amount to past persecution. *Cf. Li*, 400 F.3d at 168; *see T-Z-*, 24 I. & N. Dec. at 172 ("[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive.") (internal quotation marks omitted). The sanctions imposed in *Li* and *Cheng* were more draconian than the situation presented here, as Pang was able to maintain his land and continue farming. Although the BIA could have reached a different conclusion, the evidence is not so egregious that "any reasonable adjudicator would be compelled to conclude" that the Chinese government's actions constituted a threat to Pang's freedom or life, or constituted a severe economic disadvantage rising to the statutory level of persecution. *Sarr*, 474 F.3d at 788-89.

B.

It is more easily determined that Pang cannot show a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b). He was not harassed, other than when his home entertainment equipment was taken, or harmed in China after he paid half of the fine. His debt to the Chinese government is now fulfilled. His second child is listed in the family registry. And most significantly, his wife and children remain in China unharmed and able to continue farming. Pang has not shown that family planning officials have a continued interest in him such that there is a

11

reasonable possibility that he would suffer persecution upon his return to China. Accordingly, while Pang's situation is sympathetic, he has not established eligibility for asylum.

IV.

The showing required for withholding of removal is more stringent that the showing required for asylum. To be eligible for withholding of removal, an applicant must demonstrate that there is a "clear probability of persecution" because of his race, religion, nationality, membership in a particular social group, or political opinion. *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003) (superseded on other grounds by statute (82 U.S.C. § 1252(a)(2)(D))); 8 C.F.R. 208.16.

To be eligible for relief under the CAT, an individual must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2) (2000).

Because Pang fails to satisfy the lower burden of proof required for asylum, he also fails to satisfy the higher standard of eligibility for withholding of removal. *See Woldemeskel*, 257 F.3d at 1193. Similarly, he has not established that he more likely than not will suffer torture at the behest of the Chinese government upon his return to China and is therefore ineligible for relief under the CAT. *See* 8 C.F.R. §§ 1208.16(c), 1208.18(a). V.

For the foregoing reasons, we **DENY** Pang's petition for review of the BIA order.

12

10-9570, *Pang v. Holder*

**MATHESON**, J., concurring.

Mr. Pang presented a strong and sympathetic claim for refugee status based on past persecution. He resisted China's coercive population control program, experienced his spouse's forced sterilization, and endured significant government economic sanctions. The Board of Immigration Appeals (BIA) found Mr. Pang to be credible but, focusing largely on Mr. Pang's economic harm, rejected the past persecution claim.

The standard of review for this appeal permits reversal only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007) (quotations omitted). In my view, the evidence supports that Mr. Pang suffered past persecution. Whether the evidence compels this finding is a harder question. *See INS v. Elias-Zacarias,* 502 U.S. 478, 481 n.1 (1992) ("To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it . . . .") (emphasis in original).

Constrained by the highly deferential standard of review, and noting the substantial evidence on lack of a well-founded fear of future persecution, I concur in the result.