FILED
United States Court of Appeals
Tenth Circuit

October 31, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SUKHJINDER SINGH, a/k/a Suhha Tapa,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 18-9565
(Petition for Review)

_____

**ORDER AND JUDGMENT** [*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HARTZ**, Circuit Judges.
_____

Sukhjinder Singh is a native and citizen of India. He claims that if returned to that country he will be persecuted because of his political opinions. An immigration judge (IJ) denied his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). The Board of Immigration Appeals (BIA) summarily affirmed the IJ's denial. Mr. Singh then filed this pro se petition for review of the BIA's decision.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The IJ found Mr. Singh's testimony that he had been beaten and threatened due to his political activities on behalf of the Shiromani Akali Dal Amritsar/Mann Party (Mann Party) insufficiently credible to support his application. The IJ noted inconsistencies between his account of the beatings in various declarations and materials he filed and his in-court testimony. In addition, the IJ determined that the documentary evidence he submitted did not meet his burden for establishing either past persecution or a well-founded fear of future persecution, and that he had not satisfied the standard of proof for either his withholding of removal or CAT claims.

Mr. Singh now argues that (1) the IJ erred in making an adverse credibility determination, (2) the IJ erred in concluding he does not have a well-founded fear of future persecution, and (3) he is eligible for relief under the CAT.

We have jurisdiction under 8 U.S.C. § 1252(a) and deny the petition for review.

## I. Background

Mr. Singh was detained shortly after arriving at or near the Nogales, Arizona port of entry in July 2015. The Department of Homeland Security issued him a Notice to Appear, charging that he lacked a valid entry document and had not been admitted or paroled by an immigration officer. He conceded the charge but applied for asylum, withholding, and CAT relief. The IJ held a hearing on his claims.

At the hearing Mr. Singh testified that he is a member and supporter of the Mann Party, which advocates for the rights of members of the Sikh religion. As a worker for the Mann Party, he attended events, hung up posters, and sought to

2

motivate youths to follow the Sikh religion.  He asserted that because of his activities on behalf of the party he was attacked and beaten in or near his Punjabi village by members of an opposing political party, the BJP/Akali Dal Badal Party (Badal Party). The attacks allegedly took place in August 2014 and in February 2015.

### 1. August 2014 Incident

Mr. Singh testified that in August 2014, he was returning home on his bicycle after hanging up posters for the Mann Party.  Two cars containing Badal party members drove in front of him and blocked him.  Four party members got out of one of the cars, tore his posters, used foul language, beat him, and threatened to kill him. They told him to quit the Mann Party and to join their party.  He refused, telling them he was of the Sikh religion.

The Badal Party members had sticks and daggers, which they used to beat him. They hit him on his back, on his head, and on his legs until he fell unconscious.  A shopkeeper and taxi driver found him and transported him to a local clinic.

When he regained consciousness, his mother was present along with the two men who had transported him to the clinic.  Mr. Singh spent seven or eight hours at the clinic.  The doctor treated his wounds, examined his head, gave him injections for pain, and advised him to rest.  In the following days, he returned twice to the clinic. He stayed home for a total of ten days, recovering from his wounds.

A few days later, Mr. Singh, his neighbor Gian Singh, and his mother went to a police station to make a report concerning the incident.  After his mother told the police what had happened to Mr. Singh, they became abusive and pushed Mr. Singh

3

and his companions out of the station.  The police told them they would not accept a complaint against members of the ruling Badal Party.

### 2.  February 2015 Incident

Mr. Singh returned to participation in Mann Party activities on a reduced basis beginning in December 2014 or January 2015.  On February 15, 2015 at about 4:00 p.m. he was riding his bicycle home after buying groceries when a car approached him and struck his bicycle.  He fell over into a wheat field.

The same four individuals who had attacked him previously exited the car.  The car had Badal Party stickers on it.  This time the men were not holding anything in their hands.  But they used foul language and threatened Mr. Singh.  He was so frightened he urinated in his clothes.

The men began punching him and asking him if he was going to join the Badal Party.  One of the men went to the car, took out an iron rod, and began beating Mr. Singh with it.  To save his life, he agreed to join their party.  But even after he pledged allegiance to the Badal Party the men continued to beat him.

A man named Sham Singh drove up.  Sham Singh was a friend of Mr. Singh's father from Mr. Singh's village.  Upon spotting Sham Singh, the individuals who were beating Mr. Singh fled.  As they ran, they voiced a final threat to kill him if they saw him again.

Sham Singh took Mr. Singh to a clinic in his village, where he was treated for his injuries.  He went home the same night but returned to the clinic over the next

4

few days for further treatment. He did not report this attack to the police because they had not helped him after the first attack.

Mr. Singh's mother later learned that members of the Badal Party were looking for him in his village, so he went to live with his aunt in a village two kilometers away. After he moved to his aunt's house, his mother called him and said the individuals had come to the family home looking for him. After that call, Mr. Singh left India and eventually made his way to the United States. The last time Badal Party members came to his home looking for him was in January 2017.

In addition to his testimony before the IJ, Mr. Singh presented two written declarations in support of his claims. The first, attached to his asylum Form 1-589, will be referred to as Declaration No. 1. The second, which he filed with the immigration court, will be referred to as Declaration No. 2. The IJ found several material inconsistencies between the facts recited in these declarations, between Mr. Singh's hearing testimony and Declaration No. 1, and in other documents he presented. When offered a chance to explain the discrepancies, Mr. Singh offered factual explanations the IJ found not credible and attributed the discrepancies to mistranslation by a man who helped him at his church, to his own lack of complete knowledge of what Declaration No. 1 said, and to his inability to speak English.

## II. DISCUSSION

"On appeal of a BIA order, the scope of our review is governed by the form of the BIA decision." *Htun v. Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016) (alteration and internal quotation marks omitted). Where, as here, a single member

5

of the BIA summarily affirms the IJ's decision without opinion, "the IJ opinion constitutes the decision of the agency for purposes of appeal." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007); *see* 8 C.F.R. § 1003.1(e)(4)(ii).

> To be eligible for asylum, an alien must be a
>
> refugee, meaning that he or she generally must be outside his or her country of nationality and unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion.

*Elzour v. Ashcroft*, 378 F.3d 1143, 1148-49 (10th Cir. 2004) (ellipsis in original) (internal quotation marks omitted).

"The showing required for withholding of removal is more stringent tha[n] the showing required for asylum." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012). To be eligible for withholding of removal (also called restriction on removal), "an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (internal quotation marks omitted).

### 1. Adverse Credibility Finding

Mr. Singh argues that the IJ erred by finding him not credible. We treat the IJ's credibility assessment as a factual finding and ordinarily give it great weight. *Htun*, 818 F.3d at 1118-19. "[T]he IJ's credibility determination is reviewed for substantial evidence and should not be reversed unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 1119 (internal quotation marks omitted).

6

In reaching his adverse credibility finding, the IJ noted the following inconsistencies or omissions in Mr. Singh's accounts:

(1) In Declaration No. 1, he claimed the February 2015 incident occurred when he was standing alone at the market, but in Declaration No. 2, he claimed the attack occurred when he was returning home on his bicycle after shopping for groceries at the market.

(2) In Declaration No. 1, he claimed that after the February 2015 attack, his father's friend (Sham Singh) put him in a car and took him home. His parents saw him unconscious there and then took him to the doctor. But in Declaration No. 2, he did not describe his father's friend handing him over to his parents before he went to the doctor.[1]

(3) In Declaration No. 1, he did not mention reporting the February 2015 attack to the police. But in Declaration No. 2, he discussed reporting the incident to the police. The IJ characterized this omission in Declaration No. 1 as "a material omission of an important fact." R., Vol. 1 at 25.[2]

---

[1] In his discussion of this issue, the IJ stated that according to Declaration No. 2, Mr. Singh's "father . . . took [him] to the doctor." R., Vol. 1 at 25. But Declaration No. 2 does not say that. It states that the father's *friend*, not the father, took him to the clinic. *See id.* at 215. Even if the IJ misstated a detail in Mr. Singh's account, the inconsistency or omission he identified is present and helps to undermine Mr. Singh's credibility.

[2] The Attorney General argues the omission about going to the police was present in the account of the August 2014 incident rather than the February 2015 incident. But assuming the IJ confused the two accounts, the error is inconsequential: pointedly, Declaration No. 1 does not mention *any* police reports,

7

(4)  Another omission occurred when in Declaration No. 1, Mr. Singh only mentioned baseball bats being used against him in the August 2014 attack, but in Declaration No. 2, he added a hockey stick to the list of weapons used in the attack.

(5)  In Declaration No. 1, Mr. Singh stated that after the August 2014 attack, he began to feel good after a few hours of being with the doctor and started going to rallies again after a few days.  But in his hearing testimony he stated he went to the doctor three times, it took him ten days to recover, and he did not participate in any rallies for months afterwards.

(6)  In Declaration No. 1, Mr. Singh stated that during the February incident his political rivals approached him with "all kinds of weapons in their hands."  *Id.* at 26.[3]  In Declaration No. 2 he did not mention them having weapons in their hands but said they slapped and punched him and that one of the group then went to a vehicle and got an iron rod to hit him with.

(7)  In his Form I-589, Mr. Singh identified his mother and sister as members of the Mann Party.  But during his testimony he stated that his sister was not a member of the party, but that his father, mother, and paternal grandmother were.

_____

while Declaration No. 2 states Mr. Singh reported the August 2014 incident to the police but did not go to the police about the February 2015 incident.

[3]    The IJ referred to this as the "first incident" and stated the discrepancy "goes to the manner in which the respondent was attacked for the very first time on account of his political opinion."  R., Vol. 1 at 26.  This appears to be an error, because the IJ's analysis pertained to the *second* incident, in February 2015.  But the discrepancy the IJ identified does exist concerning the February 2015 incident, *compare id.* at 449, *with id.* at 215, and the IJ permissibly relied on the discrepancy to discount Mr. Singh's credibility.

8

(8)  In a supporting affidavit filed by Sham Singh, who intervened during the February 2015 incident, Sham Singh stated that when he stopped his car and ran towards the attackers, "some other people were also gathering there." *Id.* at 206.  But in his court testimony, Mr. Singh unequivocally stated that Sham Singh was the only person around, other than the four people who were beating him.

Mr. Singh asserts that the facts and information in Declaration No. 1 are materially consistent with those of Declaration No. 2, and that Declaration No. 2 merely filled in details that were missing from the first declaration.  We will not reverse the agency's conclusions "if they are supported by substantial evidence and are substantially reasonable." *Htun*, 818 F.3d at 1119 (internal quotation marks omitted).  Moreover, inconsistencies need not go to the "the heart of the applicant's claim, or any other relevant factor," to be considered in making the credibility determination.  8 U.S.C. § 1158(b)(1)(B)(iii).  Substantial evidence supports the IJ's reasonable conclusion that the omissions and discrepancies were material and that they made Mr. Singh's testimony non-credible.

Mr. Singh points to obvious errors in his Form I-589 that he claims show his attorneys failed to correctly prepare the application.  His contention appears to be that the discrepancies in his statements must be attributed to his attorneys rather than to himself, and he was unaware of them.  But he signed both the Form I-589 and Declaration No. 1 under penalty of perjury, and the person who prepared the I-589 form declared that the application was read to Mr. Singh in his native language before he signed it in her presence.  The IJ did not err in rejecting Mr. Singh's

9

argument that he should not be held responsible for the inconsistencies in his accounts.

## 2. Fear of Future Persecution

Mr. Singh argues that the background documents he submitted show that he has a well-founded fear of future persecution if returned to India. The IJ analyzed these documents and reached the following conclusions: (1) "Sikhs in India do have problems," but conditions are improving there for them, even in the Punjab province, since the "disastrous problems that they had in the 1980s," R. at 28-29; (2) the evidence does not show that party members who fear persecution by individual members of the other party cannot seek protection from the authorities or relocate in India to escape the threat; (3) although leaders of the Mann Party or members of that party who have advocated the establishment of an independent "Khalistan" (a homeland for Sikhs) face a heightened threat of harm, there is no evidence that Mr. Singh has advocated the creation of Khalistan or that he is a party leader, *id.* at 29; (4) Sikhs hold prominent positions in India; (5) Sikh minorities in Indian states other than Punjab "have access to housing, employment, health care, education and freedom to practice their religion" and "do not have any particular hardship in practicing their faith or having access to services and facilities available to the general public," *id.*; (6) although Sikhs in the Punjab who advocate for particular political opinions "may be subject to harassment, detention and torture," this is "much more common in the Punjab than outside of it" and "Sikhs are reportedly free to move to any state in India," *id.*; and (7) although police can track people who

relocate, "the police would likely only track someone in extreme cases," *id.* The IJ concluded that the background reports did not support a finding that Mr. Singh had a well-founded fear of persecution in India.

Mr. Singh cites statements from the written documentation that he contends required the IJ to reach a contrary conclusion. *See* Aplt./Pet. Opening Br. at 4-5. He essentially asks us to reweigh the evidence, which we cannot do. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1236 (10th Cir. 2004). The IJ found no evidence that Mr. Singh personally had publicly advocated for the creation of Khalistan, and he points to no evidence to the contrary. Substantial evidence supports the IJ's finding that he failed to establish a well-founded fear of future persecution based on political opinion.

### 3. CAT Relief

"Under the CAT, Mr. [Singh] had the burden to prove 'it is more likely than not that he . . . would be tortured if removed to the proposed country of removal.'" *Htun*, 818 F.3d at 1122 (quoting 8 C.F.R. § 1208.16(c)(2)). Mr. Singh presents a two-sentence conclusory argument that he is entitled to CAT relief. *See* Aplt./Pet. Opening Br. at 5. He does not discuss the IJ's analysis or tie his argument to specific evidence. He fails to show that the agency erred in denying CAT relief.

## III. CONCLUSION

We deny Mr. Singh's petition for review.

Entered for the Court


Timothy M. Tymkovich
Chief Judge