**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 3, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DARWIN LEONE IZAGUIRRE COREA;
IDANIA CAROLINA ORELLANA
MUNOZ; N.A.I.O, a minor; D.E.I.O., a
minor,

     Petitioners,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 24-9500
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Petitioners Darwin Leone Izaguirre Corea, Idania Carolina Orellana Munoz,

and their two minor children, N.A.I.O and D.E.I.O. (collectively Petitioners or

Family), filed for asylum, withholding of removal, and protection under the

Convention Against Torture (CAT).  An immigration judge (IJ) denied relief and the

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Board of Immigration Appeals (BIA) affirmed.  The Family now petitions for review.

Exercising jurisdiction pursuant to 8 U.S.C. § 1252, we deny the petition.

I

A

All four Family members are natives and citizens of Honduras.  In early

August 2021, all of the Family members applied for admission into the United States

at a port of entry in El Paso, Texas, but were not in possession of valid entry

documents.  Shortly thereafter, the Department of Homeland Security served them

with Notices to Appear and charged them with removability under 8 U.S.C.

§ 1182(a)(7)(A)(i)(I).  Mr. Izaguirre Corea filed an application for asylum,

withholding of removal, and protection under the CAT and listed the members of the

Family as derivative applicants for asylum.

The application alleged that Mr. Izaguirre Corea worked for an unnamed

company in Honduras and supervised another employee named Dorian Turzio,[1] who

was a member of the Mara Salvatrucha (MS-13) gang.  In February 2019, the

company fired Mr. Turzio due to confrontations he had with other employees and

because of several unjustified absences from work.  Mr. Turzio blamed Mr. Izaguirre

Corea for the firing and proceeded to send Mr. Izaguirre Corea notes, texts, and

private calls threatening to kill him and the other Family members.  Mr. Izaguirre

---

[1] The record contains conflicting information regarding this individual's last name.  For purposes of this order and judgment, we shall refer to him as Mr. Turzio.

Corea filed a complaint with the local police, to no avail.  According to the Family, the local police are controlled by the MS-13 gang.

The Family briefly moved to San Ignacio, a different city in Honduras.  Mr. Izaguirre Corea alleged that the conditions in San Ignacio were unhealthy for the children, so the Family returned to their original city.  Upon their return, a man associated with the MS-13 gang allegedly tried to run over Ms. Orellana Munoz and the two children with a motorcycle as they were returning from a store to their home.  The Family believes that Mr. Turzio "sent th[e] man" because he and the man "belonged to the same gang and because [Mr. Turzio] was on the same block as the accident, watching and laughing at what had happened."  R. vol. 9 at 690.

Approximately three weeks later, the Family left Honduras for Mexico City.  They experienced difficulties with a cartel during the trip.  Once in Mexico City, the Family moved multiple times over the course of two years in order to avoid the cartel.  Ultimately, the Family left Mexico City and entered the United States.

B

At a hearing before the IJ, Mr. Izaguirre Corea testified and three documentary exhibits were admitted into evidence.  The IJ also took administrative notice of the Department of State's 2021 Honduras Human Rights Report.

Shortly after the hearing, the IJ denied relief and ordered the Family to be removed to Honduras.  The IJ found, as an initial matter, that Mr. Izaguirre Corea was not a credible witness.  Based on that credibility finding, and because "the other

3

evidence submitted" could not "independently meet [the] burden of proof," the IJ found that the Family was ineligible for any form of relief.  R. vol. 8 at 646.

Alternatively, the IJ concluded that even if Mr. Izaguirre Corea's testimony was credible, he and his Family members still failed to demonstrate their eligibility for relief.  With respect to the application for asylum, the IJ concluded that Mr. Izaguirre Corea failed to establish that he "suffered past persecution or" had a "well-founded fear of persecution on account of a protected ground."  *Id.* at 648.  For the same reasons, the IJ also concluded that Mr. Izaguirre Corea "fail[ed] to meet the more stringent standard for withholding of removal."  *Id.*  Lastly, the IJ rejected the request for protection under the CAT, concluding there was insufficient evidence that Mr. Izaguirre Corea was more likely than not to face torture upon return to Honduras.

The Family appealed to the BIA, which affirmed the IJ's decision without opinion.

The Family members have now filed a pro se petition for review of the BIA's decision.[2]

II

The Family asserts four challenges to the BIA's decision.  For the reasons that follow, we reject all four challenges and deny the petition for review.

---

[2] Because the Family appears pro se, we liberally construe their petition, but will not act as their advocate.  *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

A

The Family begins by arguing that the BIA abused its discretion and violated their due process rights by affirming the IJ's decision without opinion. We reject this argument. "'In order to make out a claim for a violation of due process, a claimant must have a liberty or property interest in the outcome of the proceedings.'" *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (quoting *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004)). Aliens, however, "do not have a constitutional right to enter or remain in the United States." *Id.* Relatedly, a petitioner in an immigration proceeding "'has no liberty or property interest in obtaining purely discretionary relief.'" *Id.* (quoting *Dave*, 363 F.3d at 653). The only protections afforded to a petitioner in an immigration proceeding include the "opportunity to be heard at a meaningful time and in a meaningful manner," "factfinding based on a record produced before the decisionmaker and disclosed to" the petitioner, "and an individualized determination of his interests." *de la Llana-Castellon v. I.N.S.*, 16 F.3d 1093, 1096 (10th Cir. 1994) (internal quotation marks omitted). The record in this case firmly establishes that the Family was afforded those rights. Not only did the IJ conduct an evidentiary hearing and take testimony from Mr. Izaguirre Corea, the IJ issued a lengthy written decision denying their claims. We therefore conclude that the BIA's process of affirming the IJ's decision without opinion, which is expressly authorized by regulation, 8 C.F.R. § 1003(e)(4), did not give rise to a due process violation. *See Arambula-Medina*, 572 F.3d at 828–29 (rejecting similar due process argument).

5

B

The Family next argues that the BIA erred in affirming the IJ's finding that Mr. Izaguirre Corea's testimony was not credible. The Family asserts in support that "[t]he IJ based her" credibility finding on "minor discrepancies between" Mr. Izaguirre Corea's "testimony and [a] police report," but "failed to consider all relevant factors in this case," including "demeanor, candor, responsiveness, and the country conditions which heavily contributed to" Mr. Izaguirre Corea's "daily life and resulted in minor deviation[s] in his testimony." Aplt. Br. at 11.

When we review a BIA decision, "the scope of our review is governed by the form of the BIA decision." *Htun v. Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016) (internal brackets and quotation marks omitted). Because the BIA in this case affirmed without opinion the IJ's decision, that made the IJ's decision "the final agency determination." 8 C.F.R. § 1003.1(e)(4)(ii) (internal quotation marks omitted). We therefore review the IJ's decision. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006) ("By using this method, the BIA action renders the IJ decision the final substantive order for our review."). In doing so, we review the IJ's legal determinations de novo and her factual findings for substantial evidence. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

"The IJ's credibility assessment is a factual finding and will ordinarily be given great weight." *Htun*, 818 F.3d at 1118–19 (internal quotation marks and

citations omitted).  More specifically, a credibility determination is "subject to the substantial evidence test."  *Uanreroro*, 443 F.3d at 1204.  Under that test, our role is to "look to the record for 'substantial evidence' supporting the agency's decision."  *Id.*  In other words, we must determine whether the credibility determination is "supported by reasonable, substantial and probative evidence considering the record as a whole."  *Id.* (internal quotation marks omitted).

In this case, the IJ stated she was "chiefly concerned with" Mr. Izaguirre Corea's "inconsistent accounts of the past threats and harm he and his family claim to have faced in Honduras."  R. vol. 1 at 35.  The IJ noted that Mr. Izaguirre Corea testified about two "alleged incidents in which gang members tried to harm his wife and daughter."  *Id.*  Mr. Izaguirre Corea testified that the first incident occurred on July 22, 2019, while Ms. Orellana Munoz was waiting for her daughter outside of the daughter's school.  A man that Ms. Orellana Munoz perceived to be a gang member "rode past her on a bicycle and tried to push her, saying" that Mr. Izaguirre Corea "would pay or they would."  *Id.* at 36.  Mr. Izaguirre Corea testified that he filed a written report with the police on July 23, 2019, the day after the incident with the bicycle, and that he and his family moved to San Ignacio shortly after he filed the report.  According to Mr. Izaguirre Corea, the second incident occurred shortly after he and his family returned to their original city.  The second incident, Mr. Izaguirre Corea testified, occurred when Ms. Orellana Munoz and their daughter were out grocery shopping and two gang members tried to run them over with a motorcycle.

The IJ noted that, in "stark contrast" to Mr. Izaguirre Corea's testimony, the written police report he filed "include[d] detail about the motorcycle incident." *Id.* The IJ also noted that when she asked Mr. Izaguirre Corea about this discrepancy, he "completely changed his testimony" and stated that it was the motorcycle incident that prompted him to file the written police report. *Id.* The IJ found that "this sudden change in his story, after repeatedly testifying that the motorcycle incident occurred after the police report was filed," was not "convincing." *Id.* The IJ also found unpersuasive Mr. Izaguirre Corea's testimony that he did not mention the bicycle incident in the written police report because he and Ms. Orellana Munoz did not realize until after the report was filed that it was Mr. Turzio who sent the person on the bike. In addition, the IJ found it "questionable" that Mr. Izaguirre Corea could not recall Mr. Turzio's last name at the evidentiary hearing, and noted that Mr. Izaguirre Corea had given conflicting reports of Mr. Turzio's last name prior to the hearing. *Id.*

Lastly, the IJ stated she was "troubled by the conspicuous inconsistencies in the timeline of central events on which his claim [wa]s based." *Id.* Although the IJ "acknowledge[d] that small details and dates can sometimes be difficult to recall," she noted that Mr. Izaguirre Corea "provided wholly different and shifting accounts of the harm and the reporting of the harm his asylum claim hinge[d] on," "omitted key information from the police report," and "could not recall the last name of the man who purportedly threatened him daily and caused him to flee his country." *Id.* at 37.

Based upon our own review of the record, including the transcript of the evidentiary hearing and the documentary evidence, we conclude that the IJ's credibility determination is supported by substantial evidence. Although the Family argues that the discrepancies between Mr. Izaguirre Corea's testimony and the police report were "minor" and "isolated," the IJ concluded otherwise and we are not persuaded the IJ erred in doing so. Aplt. Br. at 10. We also reject the Family's assertion that the IJ "failed to consider . . . demeanor, candor, responsiveness, and the country conditions which heavily contributed to" Mr. Izaguirre Corea's "daily life and resulted in minor deviation in his testimony." *Id.* at 11. Our review of the hearing transcript, which includes the IJ's direct questioning of Mr. Izaguirre Corea, persuades us that the IJ considered Mr. Izaguirre Corea's demeanor, candor, and responsiveness in assessing his credibility. And, indeed, the IJ noted in her written order that her credibility assessment of Mr. Izaguirre Corea depended, in relevant part, on his "demeanor, candor, [and] responsiveness," and she specifically found a "lack of candor" on Mr. Izaguirre Corea's part. *Id.* at 35, 37. As for the conditions in Honduras in general, the Family does not explain how those could have impacted Mr. Izaguirre Corea's testimony at the hearing. Thus, in sum, we find no reason to disturb the IJ's credibility determination.

C

In their third issue, the Family challenges the IJ's finding that there was no nexus between Mr. Izaguirre Corea's "particular social group, 'Known Witnesses Who Have Filed a Police Report Against a Member of the Mara Salvatrucha Gang in

Honduras,' and the harm suffered." Aplt. Br. at 14. They argue that Mr. Izaguirre

Corea "began to receive death threats once" Mr. Turzio, "an MS-13 gang member,

was fired" and that "[t]hese threats escalated when" Mr. Izaguirre Corea "filed a

police report after receiving numerous death threats and text messages from"

Mr. Turzio. *Id.* They also argue that Ms. Orellana Munoz and her daughter "were

almost run over by a motorcycle driven by an MS-13 gang member." *Id.* at 14–15.

"During this incident," they argue, "the man on the motorcycle yelled out" that

Mr. Izaguirre Corea "'would pay for what he did.'" *Id.* at 15. They argue that "[t]his

statement was made because" Mr. Tuzio "and his gang members must have found out

that" Mr. Izaguirre Corea "filed a police report against them." *Id.*

As the IJ correctly noted, asylum applicants must, in order to obtain relief,

prove they are "refugees." 8 U.S.C. § 1158(b)(1)(B)(i). To do so, they "must

establish that race, religion, nationality, membership in a particular social group, or

political opinion was or will be at least one central reason for persecuting" them. *Id.*

The Family alleged they were members of a particular social group that they defined

as "Known Witnesses Who Have Filed a Police Report Against a Member of the

Mara Salvatrucha Gang in Honduras." Aplt. Br. at 14. The IJ expressed skepticism

whether this was a cognizable social group for purposes of § 1158(b)(1)(B)(i), but

found that, even assuming it was, the Family failed to show their membership "in this

purported group [wa]s a central reason why [they] w[ere] or would be targeted for

harm." R. vol. 1 at 38. The IJ noted in support that: (1) Mr. Izaguirre Corea's

testimony about what occurred was not credible and the record failed to show that

10

Mr. Turzio and his purported gang affiliates threatened Mr. Izaguirre Corea because he filed the police report; (2) even if Mr. Izaguirre Corea's testimony was credible, Mr. Turzio and his alleged gang member affiliates "were motivated primarily by a private vendetta," i.e., Mr. Turzio blamed Mr. Izaguirre Corea for his being fired. In short, the IJ found that "the central reason" for Mr. Turzio targeting the Family "was a private vendetta." *Id.* at 39.

After reviewing the record, we conclude that the IJ's findings related to this issue are supported by substantial evidence. *See Miguel-Pena v. Garland*, 94 F.4th 1145, 1161 (10th Cir. 2024) (reviewing IJ's nexus finding for substantial evidence). To begin with, we have already concluded that the IJ's credibility determination regarding Mr. Izaguirre Corea's testimony was supported by substantial evidence. We further conclude that the evidence in the record amply supports the IJ's finding that Mr. Turzio and his affiliates threatened Mr. Izaguirre Corea and the other Family members because of Mr. Turzio's belief that Mr. Izaguirre Corea was responsible for Mr. Turzio being fired from his job. We therefore conclude that the IJ did not err in ultimately finding that the Family failed to show they were targeted because of their membership in the identified social group.

D

In their final issue, the Family challenges the IJ's findings that Mr. Izaguirre Corea was ineligible for withholding of removal or protection under the CAT. As we shall explain, we find no merit to these challenges.

"To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (internal quotation marks omitted). "The showing required for withholding of removal is more stringent than the showing required for asylum." *Id.* Because Mr. Izaguirre Corea "fails to satisfy the lower burden of proof required for asylum, he also fails to satisfy the higher standard for eligibility for withholding of removal." *Id.*

To establish eligibility for relief under the CAT, a noncitizen must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." *Id.* § 1208.18(a)(1). Additionally, for torture to warrant withholding of removal under the CAT, it must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." *Id.* § 1208.18(a)(1).

The IJ in this case found that Mr. Izaguirre Corea failed to "provide[] credible testimony upon which" she could "rely." R. vol. 1 at 40. The IJ also noted that, even if Mr. Izaguirre Corea's testimony was credible, the evidence failed to show that he was "tortured in the past by any government official or private actor." *Id.* The IJ also concluded the evidence was "insufficient to establish that" Mr. Izaguirre Corea "fear[ed] harm at the instigation of, or with the consent or acquiescence (to include

12

the concept of willful blindness) of, a public official or other person acting in an official capacity." *Id.* Finally, the IJ found it would not be unreasonable for the Family "to try to relocate to other safer locations within" Honduras "to avoid harm." *Id.*

Having already concluded that the IJ did not err in her credibility assessment of Mr. Izaguirre Corea's testimony, we affirm the IJ's rejection of Mr. Izaguirre Corea's application for protection under the CAT on that basis. We likewise conclude that the IJ did not err in finding that, even if Mr. Izaguirre Corea's testimony was credible, it was insufficient to establish that there was any government involvement or acquiescence in the threats and attacks allegedly made by Mr. Turzio and his associates. We therefore conclude that the IJ did not err in denying relief under the CAT.

### III

The petition for review is denied. Petitioners' motion for leave to proceed on appeal in forma pauperis is granted.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge