FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**January 9, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

---

ALEX MISAEL HERNANDEZ BERNAL,

Petitioner,

v.

PAMELA J. BONDI,
United States Attorney General,

Respondent.

No. 25-9541
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **CARSON**, **BALDOCK**, and **KELLY**, Circuit Judges.

---

Alex Misael Hernandez Bernal is a native and citizen of El Salvador who entered the United States without permission. An immigration judge (IJ) found him removable and ineligible for asylum, withholding of removal, protection under the Convention Against Torture (CAT), or cancellation of removal. The Board of Immigration Appeals (BIA) dismissed his appeal in a single-member summary order.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Hernandez now petitions for review of the BIA's decision. We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition.

## I.    STANDARD OF REVIEW

We review the BIA's decision, but we may consult the IJ's more-complete discussion of the same grounds relied upon by the BIA. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We review the agency's "legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).[1]

## II.    BACKGROUND & PROCEDURAL HISTORY

Hernandez entered the United States in February 2012 and was soon placed in removal proceedings due to his entry without a valid entry document. Hernandez conceded removability but applied for asylum, withholding of removal, and CAT protection. Proceedings related to that application stretched through January 2022, when the agency administratively closed proceedings while the government adjudicated an I-130 Petition for Alien Relative filed by Hernandez's father, who is a U.S. citizen.

Hernandez has worked as a truck driver while in the United States. In March 2024—with the I-130 apparently still pending—he drove his truck through an

---

[1] All statutory citations in this order and judgment are to Title 8 of the United States Code.

immigration checkpoint in New Mexico.  Border Patrol discovered seven persons hiding in his truck, all of whom were unlawfully present in the United States.  Border Patrol therefore detained Hernandez and the agency reopened removal proceedings.  Hernandez then filed updated applications for asylum, withholding of removal, and CAT protection.  He further requested cancellation of removal.

In September 2024, Hernandez testified before an IJ in support of his applications for relief.  He stated he had been a police officer in El Salvador, and he had begun to suspect that one of his fellow officers, Víctor Contreras, was collaborating with Salvadoran gangs.  One day, Contreras left his cell phone behind at the police station, so Hernandez took the opportunity to look through its contents.  There, he discovered photos of dead people with slit throats or bullet wounds in the chest, and other photos of people on their knees with their mouths taped and a gun pointed at their heads.

Contreras came back for his phone and saw Hernandez looking at those photos.  According to Hernandez, Contreras said that he (Hernandez) must not say anything about the photos or he and his family would suffer the same fate.  R. at 184.  Despite the threat, Hernandez reported his discoveries to a superior officer, who responded that Contreras was already under investigation.

A few days later, three armed men claiming to be members of a gang came to Hernandez's house.  They surrounded Hernandez and his family, pointed guns at them, and told Hernandez that he and his family would be killed if he did not resign from the police force and leave the area.  Soon after, Hernandez resigned and fled to

3

the United States.  He fears returning to El Salvador because Contreras (who is still a Salvadoran police officer) would track him down and find a way to have him arrested.  And, once arrested, he would be thrown into jail among gang members who would kill him when they learned he had been a police officer.  This is the basis of his claims for asylum, withholding of removal, and CAT protection.

As to cancellation of removal, Hernandez testified that his 66-year-old father is an extreme alcoholic, drinking perhaps a twelve- or eighteen-pack of beer every night.  Although Hernandez, before his detention, lived two-and-a-half hours away from his father, he had a plan to have his father come live with him and go on the road with him—and in that way, Hernandez would help to cure his father's alcoholism.  But if removed, Hernandez maintained that his father would slip deeper into alcoholism and all its attendant risks.

Following the hearing, the IJ issued a written decision.  For reasons we discuss in more detail as they become relevant to our analysis below, the IJ found Hernandez had not satisfied his burden to demonstrate eligibility for any form of relief he requested.  The BIA affirmed in a summary two-page order, and this petition for review followed.

III.    ASYLUM

An asylum applicant must prove that he or she qualifies as a "refugee." § 1158(b)(1)(A).  In this context, a "refugee" is a person unable or unwilling to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

4

political opinion." § 1101(a)(42)(A). "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (internal quotation marks omitted). Thus, we may not reverse "unless any reasonable adjudicator would be compelled to conclude to the contrary" on the issue of persecution. § 1252(b)(4)(B).

The IJ concluded that the threats Hernandez received did not amount to persecution. Hernandez responds that threats can sometimes rise to the level of persecution, citing *Vatulev v. Ashcroft*, 354 F.3d 1207 (10th Cir. 2003). *Vatulev* states that "[t]hreats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution." *Id.* at 1210.

Hernandez merely asserts, without support, that the threats he received meet *Vatulev*'s "so immediate and menacing" standard. These arguments do not meet the "compelled to conclude to the contrary" standard in § 1252(b)(4)(B). We therefore find no basis to reverse the IJ's finding that Hernandez never suffered persecution.

But Hernandez may still be entitled to asylum if he has a "well-founded fear of [future] persecution," § 1101(a)(42)(A), *i.e.*, a "subjectively genuine and objectively reasonable" fear of persecution should he be returned to his home country, *Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005). The IJ concluded Hernandez did not satisfy this standard because, to the extent the gangs might still be looking for

5

him, Hernandez could relocate within El Salvador to a place not controlled by the same gangs.  The IJ supported this conclusion with: (A) the amount of time elapsed since Hernandez left the country (more than ten years), and the paucity of evidence that anyone is still looking for him; and (B) official country-conditions reports showing El Salvador has been operating under a "State of Exception" since March 2022, R. at 84, which has allowed the government to jail tens of thousands of gang members, leading to far fewer murders than before.  Hernandez counters with his own evidence tending to show that El Salvador's progress against gang violence is not as dramatic or durable as it may seem.[2]

Hernandez effectively invites us to re-weigh the evidence, which we may not do in this context.  *See Sarr v. Gonzales*, 474 F.3d 783, 789 (10th Cir. 2007) ("We do not weigh the evidence or evaluate the witnesses' credibility [when reviewing IJ/BIA decisions]." (brackets, ellipsis, and internal quotation marks omitted)).  We therefore

_____

[2] The government argues Hernandez failed to contest the IJ's internal-relocation finding before the BIA, meaning he failed to exhaust the argument and this court may not reach it.  *See* § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . .").  Although Hernandez did not specifically point out to the BIA that he was contesting the internal-relocation finding, he presented—in the context of fearing future persecution—his contrary evidence about country conditions, thus contesting an integral part of the IJ's internal-relocation finding.  Moreover, his evidence included a statement from his expert that "it is uncommon and suspicious for people to suddenly arrive in a new place and remain anonymous.  Neighbors, other residents of a town, police, and local gang members seek to learn the identity of people living in the area."  R. at 14 (internal quotation marks omitted).  Under the circumstances presented here, where country-conditions evidence was crucial to the IJ's internal-relocation finding, we conclude Hernandez's argument before the BIA was enough to exhaust the issue.

find no basis to overturn the IJ's conclusion regarding the likelihood of future persecution.

For these reasons, we do not disturb the IJ's denial of asylum.

## IV.    WITHHOLDING

Withholding of removal requires the applicant to show that his or her "life or freedom would be threatened in [the] country [to which the applicant will be removed] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  § 1231(b)(3)(A).  "The showing required for withholding of removal is more stringent tha[n] the showing required for asylum." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012).  If an applicant "fails to satisfy the lower burden of proof required for asylum, [then the applicant] also fails to satisfy the higher standard of eligibility for withholding of removal." *Id.* at 1234.

Hernandez's only argument as to withholding of removal is that all his arguments regarding asylum show he satisfies the withholding standard as well. Because we have rejected his arguments regarding asylum, we reject this argument as well.  We therefore do not disturb the IJ's finding that Hernandez is ineligible for withholding of removal.

## V.    CAT PROTECTION

The dispute over CAT protection is materially the same as the dispute over fear of future persecution.  The IJ concluded, in light of the passage of time and changed country conditions, that torture was unlikely if Hernandez returns to El Salvador.

7

Hernandez responds with his same counter-evidence about country conditions. For the same reasons given in our analysis of future persecution, we uphold the IJ's denial of CAT protection.

## VI.    CANCELLATION OF REMOVAL

To be eligible for cancellation of removal, the applicant must "establish[] that removal would result in exceptional and extremely unusual hardship to [his or her] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." § 1229b(b)(1)(D). As already described, Hernandez has a plan to help his U.S.-citizen father stop drinking. If he cannot implement that plan, he believes his father will suffer an exceptional and extremely unusual hardship, *i.e.*, further destruction of his health through alcohol consumption. As summarized by the BIA, the IJ ruled against Hernandez on this question because "[Hernandez's] testimony alone was insufficiently persuasive so as to establish that this potential plan would be put into effect or that the respondent's removal would deprive the respondent's father at a chance at recovery." R. at 4. The BIA agreed. *See id.* ("This finding is supported by the record, including [Hernandez's] own testimony and statements submitted from [his] family, and [he] has not raised any meaningful argument or identified any other evidence to establish otherwise.").

The agency's finding is twofold:

- there is not enough evidence to show that the plan will be put into effect, or, restated in terms of the statutory requirements, not enough evidence "that *removal* would *result in* exceptional and extremely unusual hardship," § 1229b(b)(1)(D) (emphasis added); and

- there is not enough evidence to show that, absent Hernandez's help, his father would suffer an exceptional and extremely unusual hardship.

We may affirm on either basis. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (stating that an independently sufficient administrative finding is enough to sustain denial of relief "regardless of the merit of [the petitioner's] arguments relating to [a separate administrative finding]").

We choose to focus on the first finding, *i.e.*, lack of evidence that Hernandez would implement his plan. As the IJ noted, "[Hernandez] has not lived with his father for the better part of a decade," and "none of the affidavits [from other family members] submitted in support of his application make mention of this plan to have his father work with him at his trucking company and move in with him." R. at 90. Also, "[Hernandez's] father lives with his wife, more than two and a half hours away from [Hernandez] and closer to [Hernandez's] siblings." *Id.* In short, there was "insufficient evidence in the record that [Hernandez] would be more of a pillar of support [to his father than other family members living closer to him]."

We cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary," § 1252(b)(4)(B). We therefore may not overturn the agency's finding that Hernandez does not qualify for cancellation of removal.

## VII.  CONCLUSION

We deny the petition for review.

Entered for the Court

Bobby R. Baldock
Circuit Judge

9