**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CRISTINA MARIA MENDOZA
MENDOZA; VA and RA, minors,

      Petitioner,

v.

JEFFREY ROSEN, Acting United States
Attorney General,[*]

      Respondent.

No. 20-9505
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **CARSON**, Circuit Judges.
_____

Cristina Maria Mendoza Mendoza and her two minor children are natives and

citizens of Guatemala. An immigration judge (IJ) found them removable and

ineligible for asylum, withholding of removal, or protection under the Convention

---

[*] On December 23, 2020, Jeffrey Rosen became Acting Attorney General of
the United States. Consequently, his name has been substituted for William P. Barr
as Respondent, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Against Torture (CAT), and ordered that they be returned to Guatemala. The Board of Immigration Appeals (BIA) dismissed their appeal from the IJ's order. They now petition for review of the BIA's decision. We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition.

## I.  BACKGROUND & PROCEDURAL HISTORY

Mendoza and her children entered the United States in May 2016 without being admitted or paroled after inspection. The next day, the government served them with notices to appear, charging them as removable. Mendoza and the children conceded inadmissibility but applied for asylum, withholding of removal, and CAT protection. At a hearing on those applications, Mendoza testified substantially as follows.

From birth until leaving for the United States, Mendoza lived in Aguacatán, Guatemala. Mendoza is a Jehovah's Witness and, consistent with her faith, spent significant time preaching in the Aguacatán region. As she preached, intolerant community members would sometimes mock and throw rocks at her and her children.

Once, in 2014, Mendoza heard people outside her home who tried (unsuccessfully) to force their way inside. After they left, Mendoza found human waste in her well. She felt threatened and perceived this as harassment based on her religious beliefs. She did not report this incident to the police because she believed the police would not care.

About six months later, Mendoza saw a suspicious man outside her home. He did not speak to her, but she believed he was searching for a way to enter. After he

2

left, others came and threw rocks at her house, damaging the roof. She believed this happened for one or both of two reasons. First, it may have been additional religious discrimination. Second, it may have been because members of the community assumed her husband (then in the United States) was sending her money. She reported this incident to the police, but they did not respond. She believes they ignored her because of her indigenous status.

Sometime in 2015, a group of people was mocking and throwing rocks at Mendoza and her children, and one man in the crowd unleashed his dog on them. The dog bit Mendoza's son.

Feeling ostracized in her community, and with no family left in Guatemala, Mendoza left with her children for the United States in May 2016.

The IJ found that Mendoza testified credibly, but that Mendoza had not carried her burden to establish that the two incidents of harassment at her home in 2014 were on account of her religious beliefs. Thus, the IJ limited her analysis to the mocking and rock-throwing while preaching, and the dog-bite incident. The IJ concluded that those events were not enough to satisfy Mendoza's burden to prove eligibility for asylum, withholding of removal, or CAT protection. The IJ found likewise for the children, whose applications were entirely derivative of their mother's. Mendoza and her children appealed to the BIA, which dismissed the appeal through a single-member summary order. Mendoza and the children then timely filed their petition for review with this court.

3

## II.     ANALYSIS

A single-member BIA order "constitutes the final order of removal" and "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* For example, we will consult the IJ's decision "where the BIA incorporates by reference the IJ's rationale or repeats a condensed version of its reasons while also relying on the IJ's more complete discussion," or "where the BIA reasoning is difficult to discern and the IJ's analysis is all that can give substance to the BIA's reasoning in the order of affirmance." *Id.*

"[W]here the BIA determines a petitioner is not eligible for relief, we review the decision to determine whether the record on the whole provides substantial support for that determination." *Id.* In so doing, we must treat "administrative findings of fact [as] conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### A.     Asylum

An asylum applicant must prove that he or she is a "refugee." 8 U.S.C. § 1158(b)(1)(A). In this context, a "refugee" is a person unable or unwilling to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id*. § 1101(a)(42)(A). "In this circuit, the ultimate determination

4

whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (internal quotation marks omitted). Thus, we may not reverse unless "any reasonable adjudicator would be compelled to conclude to the contrary" on the issue of persecution. 8 U.S.C. § 1252(b)(4)(B).

Mendoza has not met that standard. As the BIA stated, Mendoza and her children received "odious" treatment in their community, Admin. R. at 4, but the evidence does not compel a finding of persecution—"an extreme concept that does not include every sort of treatment our society regards as offensive," *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (internal quotation marks omitted). *Cf. Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007) (upholding BIA's finding of no past persecution where applicant "was beaten repeatedly by Muslim classmates . . . on account of his Christian religion," and "was repeatedly confronted by people who demanded money from him," including an occasion "when he did not have money to give, [so] he was struck and his motorcycle was burnt" (internal quotation marks omitted)); *Kapcia v. INS*, 944 F.2d 702, 704–05, 708 (10th Cir. 1991) (upholding BIA's conclusion that three police detentions and beatings, search of parents' home, assignment of poor work tasks, denial of bonuses, having locker broken into multiple times, conscription into the army leading to constant harassment, and being fired from a job, all on account of political activism, did not amount to persecution).

5

Mendoza encourages us to follow extra-circuit authority focusing on the cumulative significance of the events underlying the applicant's persecution claim. *See, e.g.*, *Fei Mei Cheng v. Att'y Gen. of U.S.*, 623 F.3d 175, 193 (3d Cir. 2010) ("Even if one incident of mistreatment is not, in and of itself, severe enough to constitute persecution, a series of incidents of physical or economic mistreatment could, taken together, be sufficiently abusive to amount to persecution."); *Kholyavskiy v. Mukasey*, 540 F.3d 555, 571 (7th Cir. 2008) ("A review of the BIA's decision leaves us with the conviction that the Board did not consider the cumulative significance of the events recounted by Mr. Kholyavskiy and his mother." (internal quotation marks omitted)). She particularly asks us to focus on whether her experiences were "continuing and escalating," Pet. Opening Br. at 23, apparently inspired by a Third Circuit decision which described "harassment [that] continued and escalated" on the way to concluding that the applicant established persecution, *Toure v. Att'y Gen. of U.S.*, 443 F.3d 310, 318 (3d Cir. 2006). In this vein, she asserts that the "harassment, discrimination, mocking, and rock throwing . . . continued over a period of several years and eventually it began to escalate," Pet. Opening Br. at 25, as allegedly evidenced by the specific incidents she recounted in her testimony.

Even if we agree with Mendoza's application of this extra-circuit authority (and we express no opinion on that), we are not persuaded that it reveals any flaw in the BIA's decision. The notion that the harassment was "escalating" is Mendoza's argumentative characterization of the evidence, not a conclusion compelled by it, nor

6

even a characterization that Mendoza herself used in her testimony before the IJ. Thus, we affirm the BIA's finding that Mendoza and her children suffered no "persecution" within the meaning of the immigration laws.

Although Mendoza might merit asylum if she has a well-founded fear of future persecution upon return to Guatemala, her only argument in that regard relies on presumptions that arise from proving past persecution. Because we affirm the BIA's finding of no past persecution, we do not reach this argument.

## B.    Withholding of Removal

Withholding of removal requires the applicant to show that his or her "life or freedom would be threatened in [the] country [to which the applicant will be removed] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The showing required for withholding of removal is more stringent tha[n] the showing required for asylum. To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of [her] race, religion, nationality, membership in a particular social group, or political opinion." *Zhi Wei Pang*, 665 F.3d at 1233 (internal quotation marks omitted). If an applicant "fails to satisfy the lower burden of proof required for asylum, [then she] also fails to satisfy the higher standard of eligibility for withholding of removal." *Id*. at 1234.

This case law appears to foreclose Mendoza's claim for withholding of removal. Mendoza, however, points us to *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017). The applicant in *Barajas-Romero* was tortured by police in Mexico

7

because they thought they could extort money from him or his family. *See id.* at 354. During the torture, the applicant expressed defiance toward corrupt police officers, and the torture continued. *Id.* at 354–55. When the applicant later entered the United States illegally and was placed in removal proceedings, he argued for withholding of removal based on his political opinion, *i.e.*, a likely threat to his life or freedom based on his opposition to official corruption. *Id.* at 355–56. The immigration judge and BIA—apparently evaluating the likelihood of future harm based on the harm he had already experienced—found that his evidence showed a threat on account of the police officers' desire to extort money, not on account of political opinion. *Id.* at 356. The Ninth Circuit vacated and remanded for further proceedings, reasoning that an applicant may deserve withholding of removal if he or she can establish that a protected characteristic (like political opinion) is *among* the reasons for the expected threat to life or liberty, not "at least one central reason" as the asylum statute requires. *Id.* at 356–60 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)).

Citing *Barajas-Romero*, Mendoza argues that she "was not required to show that the princip[al] reason why she suffered harm was on account of her religious beliefs." Pet. Opening Br. at 26. She seems to be saying that when the IJ and BIA reached the withholding-of-removal question, they should have looked at all mistreatment she experienced—both mistreatment motivated by religious animosity (such as the rock-throwing while preaching) and mistreatment not so motivated (such as the threatening visits to her house in 2014)—and then decided, based on that universe of evidence, whether Mendoza's "life or freedom would be threatened" in

8

Guatemala. 8 U.S.C. § 1231(b)(3)(A). Mendoza appears to argue that if the agency had proceeded in this fashion, it would inevitably have found the required threat to life or freedom, and withholding of removal would have naturally followed because the agency had already concluded (in the asylum context) that some of her mistreatment was motivated by religious animosity.

Mendoza does not sufficiently develop this argument for our consideration. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . ."). Her argument may fairly be summarized as, "Please read and follow this extra-circuit decision." *See* Pet. Opening Br. at 17–18. Perhaps in some contexts, such a cursory argument would be enough. Whether to adopt *Barajas-Romero*, however, raises complicated questions in this case. For example, unlike the petitioner in *Barajas-Romero*, Mendoza faced mistreatment from varying groups of people, many of whom she did not know, acting at different times and places over the course of at least two years. Mendoza offers us no guidance on how we or the agency should decide whose motives count in a complicated mixed-motive scenario such as this.

Even if Mendoza had adequately preserved this issue, it is settled in our circuit that withholding of removal requires a stronger showing than asylum, *see Zhi Wei Pang*, 665 F.3d at 1234, and we have never adopted the reasoning the Ninth Circuit applied in *Barajas-Romero*. Moreover, applying *Barajas-Romero* would not help Mendoza in this case regardless. The BIA rejected Mendoza's *Barajas-Romero* argument because (1) it is not a decision from this court, and (2) it does not

9

"materially advance [her] position as the Immigration Judge concluded that the majority of her past harm was on account of a protected ground—namely her Jehovah's Witness beliefs and activities." Admin. R. at 5. We interpret this second reason to include a factual finding that adding the few instances of non-religiously-motivated mistreatment into the weight of the evidence would still not be enough to satisfy the withholding-of-removal standard. Mendoza presents no argument that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Accordingly, even if we were to adopt *Barajas-Romero*, Mendoza fails to establish a basis for reversal or vacatur.

For these reasons, we affirm the finding that Mendoza does not merit withholding of removal.

## C.    CAT

Mendoza makes no argument against the BIA's or IJ's CAT analysis. Accordingly, she has abandoned her claim for CAT relief and we do not reach it. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[S]ome issues raised below are not mentioned in the opening brief, much less argued, and are therefore abandoned.").

## III.    CONCLUSION

We deny the petition for review.

Entered for the Court

Joel M. Carson III
Circuit Judge

10