**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 21, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NICOLASA ANAYA BARRAZA; D. A.
MARQUEZ ANAYA; A. I. MARQUEZ
ANAYA; P. S. MARQUEZ ANAYA; D.
V. MARQUEZ ANAYA,

      Petitioners,

v.

MERRICK B. GARLAND, United States
Attorney General,*

      Respondent.

No. 20-9529
(Petition for Review)

_____

**ORDER AND JUDGMENT**
_____

Before **PHILLIPS**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Petitioners Nicolasa Anaya Barraza and her daughter Angeles Marquez Anaya

filed applications for asylum, withholding of removal, and protection under the

_____

\* On March 10, 2021, Merrick B. Garland became Attorney General of the
United States. Consequently, his name has been substituted for William P. Barr as
Respondent, per Fed. R. App. P. 43(c)(2).

\*\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Convention Against Torture (CAT) based on crimes committed against Angeles and her father in Chihuahua, Mexico.[1] An immigration judge denied their applications, and the Board of Immigration Appeals (BIA) affirmed the decision on appeal. Anaya and her children now petition this court for review. Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition.

## I. BACKGROUND

Nicolasa Anaya Barraza is a native and citizen of Mexico. She and her husband, Jose Marquez Avila, had five children together. Anaya identifies as a member of the Tarahumara ethnic group. The family lived initially in Lajas, Durango, where Anaya was born. But when Anaya's brother-in-law was killed in Lajas, the family moved to Guadalupe y Calvo, Chihuahua, about 10 hours northwest of Lajas. There the family lived for several years in peace.

Eventually, however, the town's security declined as armed men started showing up and violence increased. Another of Anaya's brothers-in-law and two of Anaya's nephews were killed in Guadalupe y Calvo. The town had no police or military presence to protect against such attacks. The family nonetheless stayed because Anaya's husband had a job and the family owned a home there.

In the summer of 2012, a group of armed men Anaya believed were soldiers came to her home and searched for weapons. They found none, but they took Anaya's husband outside for questioning and then let him go. No one was harmed.

[1] Three of Anaya's other children are derivative beneficiaries on her application and therefore also parties to this petition.

2

A few weeks later, another group of armed men appeared at Anaya's house and identified themselves as members of the Mexican army. They abducted Anaya's husband. When Anaya asked where they were taking him, the men responded that her husband was "under investigation." Because there were no police, Anaya called relatives and others to inform them of what had happened. Anaya learned that the armed men were not part of the military as they had claimed, and that they had abducted other men as well.

The next morning, Anaya heard there were several dead bodies on the edge of town. She investigated and found three beheaded corpses, including that of her husband. It appeared that the three men had been tortured. Police arrived at the scene and began an investigation, and eventually produced a report. But no motive was discovered, and the killers were never identified. The other two victims had different surnames and were not related to Anaya's husband.

In June 2013, Anaya's 15-year-old daughter Angeles walked with a 12-year-old friend to a neighboring town to turn in some schoolwork. On their way back, Angeles and her friend accepted a ride from two teenaged boys in a pickup truck. Later, they were stopped by three men, two of whom were armed. The men made the four youths get out of the truck and began beating the boys, demanding to know who had sent them. Then two of the men took the girls into the hills in opposite directions. Angeles's assailant raped her, and her friend was molested. The men returned the girls to the truck and one of the men warned Angeles's friend not to say anything because he knew her family.

The youths drove back to the neighboring town they had departed from. In the meantime, Anaya had become concerned about Angeles's whereabouts and asked some soldiers to help search for her. When Angeles and her friend arrived back, the soldiers stopped them and held the girls for 30 minutes until their mothers came to get them.

The next day, Angeles told her mother what had happened, and Anaya took Angeles to a police station several hours away to file a complaint. A medical examination was conducted, and a police report produced.

A few months later, Anaya and her five children arrived at a port of entry near El Paso, Texas, and asked to apply for asylum. Anaya and her four youngest children were paroled into the United States.[2] On December 12, 2013, an asylum officer interviewed Anaya and found her to have a "credible fear of persecution," *see* 8 U.S.C. § 1225(b)(1)(B)(v), and that therefore there was a "significant possibility" of her and her four children proving eligibility for asylum.

Anaya and her daughter Angeles each filed asylum applications and a hearing was held before an immigration judge on October 30, 2017. The evidence included testimony by Anaya and Angeles, as well as the introduction of numerous documents, including past statements and affidavits from Anaya and Angeles, police reports, and the report of a therapist who had interviewed Anaya.

---

[2] Anaya's oldest child, Manuel, was an adult and therefore processed separately. He was eventually removed to Mexico.

On May 9, 2018, the immigration judge issued a decision denying the asylum applications and ordering that Anaya and her family be removed to Mexico. The immigration judge held, among other things, that the Petitioners had not proved the necessary elements of an asylum claim. In particular, the immigration judge held they had not established (1) that any persecution they suffered had been on account of a statutorily protected ground, or (2) that the persecution was committed by the government or by forces the government was unwilling or unable to control.

Anaya and Angeles appealed to the BIA. The BIA issued a decision affirming the decision of the immigration judge. It held the Petitioners had failed to appeal the immigration judge's determination that the Petitioners had not shown the necessary government involvement in their persecution. The BIA further agreed with the immigration judge that Petitioners had not shown they had been persecuted on account of a statutorily protected ground.

Anaya and her children Diana, Angeles, Paulo, and Deysi (collectively, "the Petitioners") then filed a timely petition for review with this court.

## II. DISCUSSION

The BIA issued a reasoned opinion drafted by a single Board member. We therefore "review the BIA's decision as the final agency determination and limit our review to issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006). But "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the [immigration judge's] more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

5

"When reviewing BIA decisions, an appellate court must look to the record for substantial evidence supporting the agency's decision:  Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole."  *Sarr v. Gonzales*, 474 F.3d 783, 788 (10th Cir. 2007) (brackets and internal quotation marks omitted).  "Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* at 788-89 (internal quotation marks omitted).

## A. Asylum

Asylum applicants have the burden of demonstrating eligibility by proving they are refugees.  8 U.S.C. § 1158(b)(1)(B)(i).  To meet that burden, applicants must establish (1) they suffered past persecution or have a well-founded fear of future persecution that is (2) "on account of" a statutorily protected ground and (3) committed by the government or by forces the government is either unable or unwilling to control.  *Rivera-Barrientos v. Holder*, 666 F.3d 641, 646 (10th Cir. 2012); *see also* 8 U.S.C. § 1101(a)(42)(A) (providing definition of "refugee").

The Petitioners argued they were persecuted on account of their membership in three distinct social groups:  the Anaya family; Tarahumara indigenous members; and "indigenous women left vulnerable after adult men in their family are murdered."  R. at 975 (internal quotation marks omitted).  We address each in turn.[3]

---

[3]  The government contends the Petitioners failed to make any argument before the BIA concerning the element of government involvement in their persecution.  The government argues the Petitioners' failure to exhaust that issue, which is a necessary element of an asylum claim, deprives this court of jurisdiction to review Petitioners'

First, while membership in a particular family may qualify as a statutorily protected ground, *see In re L-E-A-*, 27 I. & N. Dec. 40, 42-43 (B.I.A. 2017), the Petitioners must show that such membership was "central to the persecutor's decision to act against the victim," *Niang v. Gonzales*, 422 F.3d 1187, 1200 (10th Cir. 2005). "[T]he protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment . . . [or] be incidental, tangential, superficial, or subordinate to another reason for harm." *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (internal quotation marks omitted).

The BIA upheld the immigration judge's determination that the Petitioners had not established the required nexus between their membership in the Anaya family and the persecution they suffered. As the immigration judge noted, two other men, both unrelated to the Anayas, were kidnapped and murdered at the same time as Anaya's husband. And the men who sexually assaulted Angeles also assaulted her friend, who was not a member of the Anaya family. We conclude that substantial evidence supported the BIA's determination that the Petitioners did not suffer persecution "on account of" their membership in the Anaya family.

---

arguments on the merits. *See* 8 U.S.C. § 1252(d)(1) (limiting judicial review of removal orders for which "the alien has exhausted all administrative remedies available"). But the BIA nevertheless addressed the merits of the Petitioners' remaining arguments even though it determined the Petitioners had not presented any "meaningful argument[]" on the government involvement issue. *See* R. at 974. We therefore deem it appropriate to address those arguments as well. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1122 (10th Cir. 2007).

Second, the Petitioners assert they were persecuted because of their status as Tarahumara indigenous members forced from their land. The BIA correctly noted that a proposed social group "cannot be defined exclusively by the fact that its members have been subjected to harm." *Rivera-Barrientos*, 666 F.3d at 650 (internal quotation marks omitted). But even if the social group were defined only as members of the Tarahumara ethnic minority, the immigration judge found no evidence that Petitioners' ethnicity is related to any persecution they have suffered. The immigration judge also found based on the evidence presented that the harm the Petitioners fear in Mexico is widespread and indiscriminate rather than aimed specifically at Tarahumara indigenous people. Being subject to random criminality is not a protected status upon which to grant asylum. *See Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003). We hold these determinations are also supported by substantial evidence.

Third, the Petitioners argue they were persecuted because of their status as indigenous women left vulnerable when adult men in their family were murdered. To be cognizable, however, a social group must be defined with particularity, "[t]he basic premise" of which "is that the proposed group have particular and well-defined boundaries." *Rivera-Barrientos*, 666 F.3d at 648-49 (internal quotation marks omitted). The BIA affirmed the immigration judge's determination that this proposed social group is too amorphous to satisfy this requirement. As the immigration judge held, this proposed social group fails to provide a clear benchmark for determining who is included. We agree the term "vulnerable" in this context is too vague to satisfy the particularity requirement. *See id.* at 649 ("If the description of the proposed group is too

8

amorphous, and ideas of what the relevant terms mean are likely to vary, the applicant has failed to provide an adequate benchmark for determining group membership." (internal quotation marks omitted)).

## B. Withholding of Removal

"To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (internal quotation marks omitted). Because the Petitioners have not met the requirements for asylum, they cannot "satisfy the higher standard of eligibility for withholding of removal." *Id.* at 1234.

## C. CAT Relief

"Article 3 of the Convention Against Torture prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (internal quotation marks and brackets omitted). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). This standard does not require "actual knowledge, or willful acceptance" by the government. *Cruz-Funez*, 406 F.3d at 1192 (internal quotations marks omitted). Under the substantial-evidence standard, we

must deny the petition unless no reasonable adjudicator could reach the same finding as the immigration judge and BIA.

The immigration judge found that the record as a whole did not support a finding that if removed to Mexico, the Petitioners are more likely than not to be tortured by a public official or with the consent or acquiescence of a public official. We agree that although the Petitioners have expressed a fear of persecution from unidentified armed men and are concerned about the lack of police resources to control violence in their region, the evidence did not rise to the level of acquiescence. Indeed, as the immigration judge noted, in each instance of violence perpetrated against Anaya's husband and Angeles, the government conducted an investigation. And when Angeles did not return home when Anaya expected, she sought and received help from soldiers in the area. We hold that the immigration judge's decision denying relief under CAT, and the BIA's subsequent affirmance, are well within the boundary of reasonableness.

## III.  CONCLUSION

We uphold the BIA's affirmance of the immigration judge's decision under the substantial evidence standard. The petition for review is denied. The Petitioners' "Motion for Leave to Proceed on Appeal Without Prepayment of Costs or Fees" is granted.

Entered for the Court

Gregory A. Phillips
Circuit Judge