FILED
United States Court of Appeals
Tenth Circuit

May 24, 2021

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

GRACE O. AKINFOLARIN,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,*

    Respondent.

No. 20-9547
(Petition for Review)

_____

**ORDER AND JUDGMENT****

_____

Before **MATHESON**, **BRISCOE**, and **CARSON**, Circuit Judges.

_____

Grace O. Akinfolarin, a native and citizen of Nigeria, applied for asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT")

based on her religion and membership in particular social groups.  The immigration

_____

    * On March 11, 2021, Merrick B. Garland became Attorney General of the
United States.  His name has been substituted for William P. Barr as Respondent, per
Fed. R. App. P. 43(c)(2).

    ** After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judge ("IJ") denied relief, and the Board of Immigration Appeals ("Board" or "BIA") dismissed the appeal. Ms. Akinfolarin now petitions for review of the Board's decision. Exercising jurisdiction under 8 U.S.C. § 1252(a), we dismiss the petition in part and deny it in part.

## I. BACKGROUND

### A. *Legal Background*

To succeed with an asylum claim, a petitioner must establish that she is a refugee. *See* 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is "unable or unwilling to return to the country of origin 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645-46 (10th Cir. 2012) (quoting 8 U.S.C. § 1101(a)(42)(A)) (emphasis omitted). "Persecution is the infliction of suffering or harm upon those who differ . . . in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (quotations omitted). "[P]ersecution may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control." *Id.* (quotations omitted).

"The showing required for withholding of removal is more stringent tha[n] the showing required for asylum." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012). "To be eligible for withholding of removal, an applicant must

2

demonstrate that there is a clear probability of persecution because of [her] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (quotations omitted). If an applicant "fails to satisfy the lower burden of proof required for asylum, [s]he also fails to satisfy the higher standard of eligibility for withholding of removal." *Id.* at 1234.

Finally, "[t]o be eligible for relief under the CAT, an individual must establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* at 1233-34 (quotations omitted). "Torture" is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" for certain purposes "by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

### B. *Factual and Procedural Background*

Ms. Akinfolarin is a Christian. She fears harm from a secret society called the Ogboni Fraternity, which counted her father as a member.

In May 2018, her father took her to the Ogboni shrine, where she was required to participate in a ritual with persons dressed in white. Four months later, her father died. Ms. Akinfolarin intended to give him a Christian burial, but Ogboni Fraternity members disrupted the burial and started to take the body. When she attempted to prevent them, they threatened her and then beat her with a horsewhip, chairs, and broken bottles. Ms. Akinfolarin awoke in the hospital, where she remained for a

3

week because of her injuries. While she was unconscious, the Ogboni had absconded with her father's body.

Ms. Akinfolarin's pastor reported the attack. Two police officers visited the hospital to take her statement. She recognized them as Ogboni members from the May ritual and from Ogboni rings they were wearing. Although Ms. Akinfolarin was frightened, she gave her statement. The officers said they would investigate, but she does not know whether they did. Her father's body was not returned.

After Ms. Akinfolarin left the hospital, the Ogboni wrote to her that her father had pledged her as his replacement, and she had no choice but to join. Her pastor advised her to engage in a prayer vigil. During her vigil, a group of persons dressed in white surrounded her house, chanting and singing. She and her son fled for the church. Their house was burned down that night. Ogboni members also threatened the church if it did not release her to them.

The church helped her to relocate to Lagos, but strangers came looking for her at her new church. Her pastors helped her flee from Nigeria to Venezuela. After some time in Venezuela and Mexico, she arrived in the United States, where she immediately sought asylum.

Ms. Akinfolarin represented herself at her hearing before the IJ. After listening to her testimony, the IJ concluded she was credible and the harm she described rose to the level of persecution. But he further held that Ms. Akinfolarin

4

had failed to establish that the harm she suffered was "on account of" of a protected ground, as required for asylum.

The IJ first examined whether the harm was on account of being a member of a particular social group. Ms. Akinfolarin, proceeding pro se, had not defined any particular social group, but the IJ identified the following two groups: (1) "individuals in Nigeria whose fathers have died and the Ogboni Fraternity wants them to take their place," and (2) "individuals that attempted to stop the Ogboni Fraternity from burying or attending to a member in a manner consistent with their traditions." Admin. R. at 68.[1] The IJ held that these groups were not cognizable "particular social groups" because the record did not show that they are socially distinct. *See Rodas-Orellana v. Holder*, 780 F.3d 982, 990-91 (10th Cir. 2015) (requiring that a cognizable "particular social group" have immutability, particularity, and social distinction).

The IJ next examined whether the harm was on account of Ms. Akinfolarin's Christian religion. While recognizing that the Ogboni had harmed Ms. Akinfolarin and threatened her, he held that "there simply is insufficient evidence in the record that the Ogboni were motivated to harm [her] because of her religious beliefs. . . .

---

[1] During the hearing, the IJ also referred to a group of "individuals that are opposed to joining the Ogboni Fraternity," Admin. R. at 123, but the IJ's oral decision did not address that group. Ms. Akinfolarin did not request consideration of that group before the Board, and the Board's decision addressed only the groups identified in the IJ's oral decision. We consider only the groups the Board addressed.

While [her] Christianity may be the reason why she does not want to participate, there is insufficient evidence that [her] Christianity was the reason that the Ogboni sought to harm her." Admin. R. at 69. "Rather, the evidence in the record indicates it is the Ogboni's desire to have her join their organization [that] is the reason that they were harassing her." *Id.* at 69-70.

The IJ further determined that there was insufficient evidence to conclude that the government of Nigeria was unable or unwilling to protect Ms. Akinfolarin. The IJ noted Ms. Akinfolarin's belief that many Ogboni members were in the police force, but held that the record did not support that belief.

Because Ms. Akinfolarin failed to satisfy the standards for asylum, the IJ also denied withholding of removal. As for CAT relief, the IJ held that the record was insufficient to determine that Ms. Akinfolarin would likely be tortured "by or at the instigation of or with the consent or acquiescence of a public official or person acting in an official capacity." *Id.* at 72.

Ms. Akinfolarin obtained counsel for her appeal to the Board. In a brief one-member order, the Board affirmed the IJ's determinations and dismissed the appeal. Represented by different counsel before this court, Ms. Akinfolarin now petitions for review of the Board's decision.

## II. **DISCUSSION**

"When a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's

6

decision relied on by the BIA in reaching its conclusion." *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010) (quotations omitted). We review legal conclusions de novo and factual findings for substantial evidence. *Id*. Under the substantial-evidence standard, "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)).

## A. *Asylum*

### 1. **Failure to Develop the Record**

In arguing that the agency erred in analyzing whether she was harmed on account of a protected ground, Ms. Akinfolarin first asserts that the IJ failed to create a full factual record at the hearing. She asserts that "there are, arguably, constitutional and statutory due process responsibilities that require[] the IJ to adequately develop the record on particular social group, especially when the Petitioner is pro se." Pet'r Br. at 13.

As Ms. Akinfolarin concedes, however, she did not raise this argument before the Board. This court generally lacks jurisdiction to consider arguments that the petitioner did not first raise before the Board. *See* 8 U.S.C. § 1252(d)(1); *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010). And although there is an exception for constitutional questions, "objections to procedural errors or defects that the BIA could have remedied must be exhausted even if the alien later

7

attempts to frame them in terms of constitutional due process on judicial review."
*Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1094 (10th Cir. 2008).

Ms. Akinfolarin's argument that the IJ failed to adequately develop the record is a procedural defect that the Board could have remedied. Because she did not raise the argument before the Board, we do not have jurisdiction to consider it. *Cf. Soberanes v. Comfort*, 388 F.3d 1305, 1309 (10th Cir. 2004) ("[P]etitioner's complaints about omissions by counsel and associated inadequacies in his evidentiary and review proceedings fall within the [jurisdictional] prohibition.").

### 2. Error in Formulating Particular Social Groups

As described above, because Ms. Akinfolarin proceeded pro se, the IJ identified two potential social groups for her. She argues that he erred in formulating "very narrow, odd renditions of particular social groups" and instead "should have identified particular social groups within existing standards." Pet'r Br. at 17. But as with her first argument, we lack jurisdiction consider this argument because she did not raise it before the Board. *See* § 1252(d)(1); *Garcia-Carbajal*, 625 F.3d at 1237.

### 3. Persecution on Account of Membership in a Particular Social Group

Ms. Akinfolarin next argues that the agency erred in determining that the social groups the IJ identified were not cognizable groups. She asserts that the groups are immutable, particular, and socially distinct, *see Rodas-Orellana*, 780 F.3d at 990-91. We need not consider immutability and particularity because social distinction—the ground relied on by the IJ and the Board—is dispositive.

8

Social distinction means that the group is perceived as a group by the society in question. *See id.* at 991. It "requires that the relevant trait be potentially identifiable by members of the community, either because it is evident or because the information defining the characteristic is publicly accessible." *Id.* (quotations omitted). Ms. Akinfolarin argues that an Immigration and Refugee Board of Canada report in the record demonstrates that the Ogboni are socially distinct. But that misses the point. Ms. Akinfolarin must show the social distinctiveness not of the Ogboni themselves, but of "individuals in Nigeria whose fathers have died and the Ogboni Fraternity wants them to take their place" and/or "individuals that attempted to stop the Ogboni Fraternity from burying or attending to a member in a manner consistent with their traditions," Admin. R. at 68. The Refugee Board report says nothing about such groups, and Ms. Akinfolarin points to no other evidence in the record to undermine the agency's conclusion that the proposed groups are not socially distinct.

Ms. Akinfolarin asserts that the social group her counsel argued on appeal to the Board—the nuclear family unit of her and her father—was "essentially the same as the IJ's social group based on her relationship to her father," Pet'r Br. at 23, and therefore the Board erred in declining to consider that group after determining that it was newly raised on appeal. But we agree with the Board that her nuclear family was sufficiently different from the other groups so as to constitute a new proposed group on appeal.

9

### 4. **Persecution on Account of Religion**

Ms. Akinfolarin next challenges the determination that she was not persecuted on account of her religion. She asserts that when she opposed the Ogboni's removal of her father's body because she wanted to bury him in the Christian tradition, "[h]er religious beliefs were made known and she was harmed on account of it." *Id.* at 24.

"For persecution to be 'on account of' [a protected ground], the victim's protected characteristic must be central to the persecutor's decision to act against the victim." *Niang v. Gonzales*, 422 F.3d 1187, 1200 (10th Cir. 2005); *see also* § 1158(b)(1)(B)(i) (requiring the asylum applicant to establish that a protected ground "was or will be at least one central reason" for persecution). "[T]he protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Dallakoti*, 619 F.3d at 1268 (quotations omitted). To reverse the Board's decision, "the record must establish that any reasonable adjudicator would be compelled to conclude that one of the central reasons" the Ogboni targeted Ms. Akinfolarin was because of her religion. *Id.*

But it does not. Rather, the record contains substantial evidence that the Ogboni harmed and threatened Ms. Akinfolarin not because she is a Christian, but because she obstructed their efforts to achieve their own objectives. *See Orellana-Recinos v. Garland*, 993 F.3d 851, 858 (10th Cir. 2021) (petitioner failed to demonstrate nexus where "the gang's 'ultimate motivation' was to recruit [her son],

10

not to attack his family"); *Rodas-Orellana*, 780 F.3d at 996 (petitioner was subject to harm not because of his membership in a particular social group, but because his assailants wanted "to take his money or have him join the gang"); *Dallakoti*, 619 F.3d at 1268 (petitioner was threatened because he could supply resources to the assailants, not because of his political opinion).[2]

## B. *Withholding of Removal*

Because Ms. Akinfolarin fails to satisfy the burden of proof for asylum, she also necessarily fails to satisfy the higher standard for withholding of removal. *See Zhi Wei Pang*, 665 F.3d at 1234; *Dallakoti*, 619 F.3d at 1268.

## C. *CAT Relief*

With regard to her CAT claim, Ms. Akinfolarin refers to her earlier discussion of the IJ's duty to develop the record and argues that "[t]here is insufficient evidence to determine whether Nigeria may torture Ms. Akinfolarin because the IJ failed to elicit sufficient testimony in this area." Pet'r Br. at 30. Although she did not argue this issue before the Board, it appears that this court may exercise jurisdiction over the argument in the context of the CAT claim. *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion of remedies with regard to "a final order of removal"); *Nasrallah*,

---

[2] Having upheld the Board's conclusion that Ms. Akinfolarin has not shown persecution on account of a protected ground, we need not consider her argument that the agency erred in concluding that the government of Nigeria is not unable or unwilling to protect her.

140 S. Ct. at 1691, 1694 (recognizing that an order denying CAT relief is not "a final order of removal"). But even without a jurisdictional bar, our general rule is that we do not entertain arguments for reversing an agency decision that are raised for the first time in this court. *See Garcia-Carbajal*, 625 F.3d at 1237. Ms. Akinfolarin gives us no reason to disregard that rule.

## III. **CONCLUSION**

Ms. Akinfolarin's motion to proceed without prepayment of costs and fees is granted. The asylum and withholding arguments that were not raised before the Board are dismissed for lack of jurisdiction, and the petition for review is otherwise denied.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge